After considering the case and arguments, the president delivered the opinion of the court in these words :
 

 Shippen, President.
 

 The question in this case is of importance, both on account of the principles to be established by the decision, and the many cases which may possibly be affected by it. It has been learnedly and ingeniously argued on both sides ; but, though large ground has been taken, I think, the whole may be reduced to a very moderate compass.
 

 *This is not a suit brought by the state of Connecticut, or any person claiming property under their local laws, wherein a question can arise, whether effects forfeited by the laws of that state can be recovered here, by the administrators of the person whose estate is confiscated. It is simply, whether the debt has been forfeited there, and actually vested in that state; and whether anything has occurred which divests it; and whether, under the peculiar circumstances of our relative situation with regard to each other, the courts of this state can take notice of such confiscation and vesting, so as to preclude the plaintiff from recovering
 
 here,
 
 a debt due to him
 
 there,
 
 before that confiscation.
 

 
 *417
 
 In order to pave the way for a decision of these questions, and to distinguish between the situation of this country, and those treated of by the learned writers on the laws of nature and nations, and the rights of distinct independent sovereignties, quoted by the counsel, it will be necessary to point out that peculiar, relative situation, which these states stand in with regard to each other.
 

 When a resistance was made to the execution of the laws of Great Britain, and an actual war took place between us and them, we were not thirteen independent states, but colonies and provinces, belonging to, and a part of, a great empire, comprehending both countries. The resistance was made in consequence of common grievances suffered by all the provinces, from the head of that empire ; and it was a struggle to untie the knot that bound us together, and to emancipate us from the dominion of our then mother country. In the prosecution of this plan, all were equally principals, and carried on the war as a common cause, and by common consent, without being tied together by any regularly organized system of government. The first body that exercised anything like a sovereign authority, was the congress of the then united colonies, who superintended the whole, and by the like common consent, were invested with such general powers as were necessai’y for the prosecution of the war. We afterwards divided ourselves into several distinct governments, by the name of states ; still leaving the general power in congress, which, being in a great measure undefined, was exercised, with regard to internal matters, by recommendations to the several governments, instead of laws ; which, however, had generally the force of laws.
 

 The articles of confederation were not acceded to by all the states, for some years. By these articles, each state was to retain its sovereignty, freedom and independence, and every right not expressly delegated to congress ; but the free inhabitants of each state were to be entitled to all the privileges and immunities of free citizens in the several states. Before the articles of confederation were agreed to, congress had recommended to the several states to confiscate, as soon as might be, and to make sale of all the real and personal estates therein, of their inhabitants, and other persons, who had forfeited the same, and the right to the protection of their respective states.
 

 *In consequence of this recommendation, the state of Connecticut, p402 in the month of May 1778, passed an act to confiscate the estates of persons inimical to the independence and liberties of the United States, within that state. By this law, all estates, real and personal, within the state, which belonged to any person or persons who had gone over and joined with the enemies of the United States, or had aided or assisted them, or should thereafter do so, were declared to be confiscated. The mode of proceeding against those who had been inhabitants, was directed to be by application to the county court, who are empowered to give judgment and sentence, that all the estate of such persons should be foifeited for the use of the state. The court is then directed to grant administration of the estates, as in case of intestates’ estates. The administrators were to sell such estates, institute suits, recover and pay debts, and deliver over the surplus, if any, into the treasury of the state. The last clause in the act directs the mode of proceeding as to the estates of persons who never had an abode within the state.
 

 
 *418
 
 In pursuance of this act, Abiathar Camp (who is stated to have been lately a resident of the town of New Haven), in the month of September 1779, was charged, on the information of the selectmen, before the county court, with having joined the enemies of the United States, and put himself under the protection of the king of Great Britain : he was thereupon adjudged guilty, and sentence passed, that all his estate, real and personal, should be forfeited to the use of the state. Certain parts of Camp’s estate were, in consequence of this forfeiture, seized and sold ; but no proceeding was had to recover against James Lockwood, the present defendant, the debt said to be due from him to the plaintiff, although the defendant was at that time, and for some time afterwards, an inhabitant of Connecticut and amenable for the same.
 

 And here the question arises, whether the plaintiff himself can now recover it: It is contended, on the part of the plaintiff, that the proceeding against him was as an
 
 enemy,
 
 and not as a
 
 traitor,
 
 and that, therefore, the war being over, his right revives. The sentence against him was certainly not expressly for treason, and there is no judgment against him that, in terms, subjects his person to punishment as a traitor. The act of assembly directs the proceeding to be had only against the estates of such pers.ons as had joined the enemy, but it distinguishes between such as had been inhabitants of that state, and those who ■ never had an abode within it, but had estates there. The present plaintiff was convicted as an offender of the former description, being late a resident in the town of New Haven, and is plainly pointed out as a subject. Indeed, the fact is conceded, that he really was a citizen of the state, who joined the enemy long after the declaration of independence and the organization of our state governments. lie cannot, therefore, be considered in the light of such a public enemy Avhose rights are said, by the writers on the laAV of nations, to revive after the „. , termination of
 
 *the war;
 
 the municipal law of the country operated upon him as a subject, and he could not be an object of the law of nations.
 

 The objection to the courts of this state, as a sovereign independent state, interposing to prevent the recovery of a debt, on account of the confiscation of it, in another independent state, is, in a great measure, obviated by the statement Avhich I have before made of the peculiar relation that these states stand in to one another. Though free and independent states, they appear not to be such distinct sovereignties, as have'no relation to each other but by general treaties and alliances, but are bound together by common interests, and are jointly represented and directed, as to national purposes, by one body as the head of the whole. The offence which incurred the forfeiture, Avas not an offence against the state of Connecticut alone, but against all the states in the Union ; and the act which directed the forfeiture, was made in consequence of the recommendation of congress, composed of the representatives of all the states, and was a case -within the general powers vested in them, as conductors of a war in which we were all equally principals. Our courts must, therefore, necessarily take notice of the confiscations made in a sister state, on these grounds,
 
 (a)
 

 It remains, then, only to consider, whether this debt was vested in the
 
 *419
 
 state of Connecticut, and, if it was, whether it is revested in the plaintiff, by the treaty of peace ?
 

 All his estate, both real and personal, in that state was confiscated. All things come within the description of confiscable personal estate, which a man has in his own right, whether they be in action or possession; this ■ debt was due from a person then residing within the state of Connecticut, and was, consequently, confiscated, as other debts due there, and the right-of action, as well' as the debt, was vested in the state.
 

 The 4th article of the treaty of peace, which directs that creditors, on either side, shall meet with no lawful impediment to the recovery of all
 
 bond fide
 
 debts theretofore contracted, is most certainly confined to real British subjects, on the one side, and the citizens of America, on the other ; and it has been always so construed. As to the restitution of estates, rights and properties, already confiscated, it is not required by the treaty to be done, even as to real British subjects. It is agreed, indeed, by the 5th article, that congress shall recommend it to the several legislatures to provide for such a restitution ; and to those of another description, they have liberty given them by the treaty, to reside twelve months in the United States to solicit a restitution and composition with the purchasers of their estates, and congress is to recommend to the ■ states, that they be restored, on refunding the money paid for them. *But no acts for those purposes have been passed by the legislature, in consequence of any such recommendations. Indeed, the ample provision made for these people in England, seems to have been considered by the government there, as an act of justice, for not having been able to obtain a restitution by the treaty.
 

 For these reasons, we are of opinion, that Abiathar Camp is not such a person as has a right to sue for and recover this debt, already vested by confiscation in the state of Connecticut.
 

 (a)
 

 See Marks
 
 v.
 
 Johnson, Kirby’s Reports, p. 230.