*Laing *against* The United Insurance Compa-    [*174]
ny.—The Same *against* The Same.—The Same
*against* The ᵗame.(a)

Where a policy of insurance contained the following clause: ' It is also
agreed, that the property be warranted by the assured, free from any
charge, damage, or loss, which may arise in consequence of seizure or de-
tention, for or on account of any illicit or prohibited trade, or any trade in ar-
ticles contraband of war," and the vessel and cargo having been captured,
part of the cargo, consisting of block tin and tin plates, was condemned as
contraband of war; it was held that the insured were not entitled to re-
cover for any loss, in consequence of the capture; the sentence of the court
of admiralty being conclusive evidence that the tin was contraband of war.

These were actions on three different policies of insu-
rance: one on the *vessel*, another on the *cargo*, and the
other on the *freight*. The first cause was tried at the De-
cember circuit, before Mr. Justice *Radcliff*, and a verdict
was found for the plaintiff for a total loss, subject to the opi-
nion of the court on a case, the principal facts of which ap-
ply equally to all the causes.

The policies were in the usual form, with this additional
clause: " It is also agreed, that the property be warranted
by the assured, free from any charge, damage or loss, which
may arise in consequence of seizure or detention, for or on
account of any illicit or prohibited trade, or any trade in ar-
ticles contraband of war." The voyage insured was from
New York to La Vera Cruz, with the leave to touch at the
Havana. The plaintiff was owner of the vessel, and a na-
turalized citizen of the United States. The vessel was cap-

(a) Reversed in error, *infra*, p. 487. See also *Johnson* v. *Ludlow*, *infra*,
481; 1 Phillips on Ins. 712.

·tured on her voyage by a British ship of war, and carried into New Providence; and on t'ie 2d day of August, 1799, the vessel and that part of the cargo belonging to the plaintiff, were acquitted; but *six blocks of tin*, and *seventy-eight boxes of tin plates*, being part of the cargo, and belonging to other shippers, were condemned by the court of vice-admiralty, as contraband of war. After notice of the capture, and before notice of the acquittal, the vessel *and cargo, belonging to the plaintiff, together with the freight, were, on the 12th of August, 1799, abandoned to the defendant. Soon after the acquittal, the vessel returned to New York; but most of the cargo belonging to the plaintiff, was sold by him, at New Providence, to defray the expenses of the prosecution, and the remainder was brought back to New York. The plaintiff, on the 15th of June, and previous to the date of the policy on the freight, chartered the vessel to Robert Weir and James Johnson, for the voyage, for 3600 dollars, payable on the return of the vessel, and discharge of her cargo.

[*175]

It was admitted in the case, that tin in blocks is a necessary ingredient in the manufacture of brass cannon; and that tin plates are used in the manufacture of camp kettles, canteens, and canister shot, and that they are sometimes used in lining the magazines and cabouses of vessels of war. That block tin and tin plates are used in various *other manufactures*, not applicable to military or naval purposes, and are also applied to various domestic uses; that the number of purposes, not military or naval, greatly exceeds the number of those of a military and naval kind, for which they are used.

It was agreed, that either party might turn the case into a special verdict.

*Burr*, for the plaintiff.

*Hamilton* and *Troup*, for the defendants.

RADCLIFF, J.   I think it unnecessary to decide whether tin in blocks, or in any other form, is an article contraband of war; or to consider the merits of the foreign sentence. If the opinion be correct, that the insured, in every case, under-

Laing v. The United Insurance Company.

takes to maintain the truth of his warranty, it is decisive, as between him and the *insurer, in the pre- [*176] sent case. Such a construction is consistent with the terms of the warranty in the present policy. The insurers are declared to be free from " any loss which may arise in consequence of a seizure or detention for or on account of any illicit or prohibited trade, or of any trade in articles contraband of war." The construction of this warranty I consider to be the same, as the just interpretation of the policy on the face of it, and liable to the same result. There must be a judgment of nonsuit in all the causes.

KENT, J. The great point on which these several causes turn, is simply, whether the plaintiff has or has not broken his warranty, that the property should be free from loss or charge arising from seizure on account of any trade in articles contraband of war. If he has not, then, the seizure and consequent notice of abandonment, would entitle him to recover for a total loss. To determine this fact, in respect to the warranty, we are brought to a consideration of the sentence of condemnation. Are we to regard the sentence as conclusive evidence of the allegation, that the tin was an article contraband of war? If not, and the merits of the judgment are to be overruled, is tin an article contraband of war, as between us and Great Britain?

Upon the first question my opinion is, that the sentence being direct, and upon the very point of the warranty, is conclusive evidence of a breach of it. The reasons for this opinion have already been given in the case of *Vandenheuvel* v. *The United Insurance Company ;* and I am accordingly of opinion, that judgment must be for the defendant, upon the terms stated in the case.(a)

BENTON, J. was of the same opinion.

LEWIS, J. was absent.

*LANSING, Ch. J. Three questions are presented [*177] for the examination of the court; but the first,

(a) See *Vandenheuvel* v. *The United Ins. Co. supra,* p. 127, and note (b) p. 144, and note (b) p. 168.

whether tin in blocks, or tin in plates, are articles contraband of war, is, in the light in which I consider the subject, and the question arising on the warranty, such as renders a decision on the others unnecessary.

If the decision of the British court of vice-admiralty, in pronouncing these articles *contraband of war*, is correct, or if they are considered as not contraband, and yet the parties are concluded by that decision, it might impose it on the court to consider what influence the other points raised in the cause ought to have on our final determination.

As the reasons of the condemnation appear, I consider them as proper objects for the examination of this court; and this is strictly conformable to the principles laid down in the cases arising in the British courts, and which, I take it, there is no adjudication of our courts to restrain, except the case of *Ludlow* v. *Dale*, (1 Johns. Cas. 16.) That case was determined on the point, that the sentences of foreign courts were conclusive, after *a full argument* on the other points *presented in the cause*, in which the counsel refrained from laying any great stress on it, their attention being principally directed to the other points in the cause.

It is certain that the British courts have distinguished between cases presenting a right of condemnation, as deducible from the law of nations, and such as, dictated by peculiar views or situations, are arrogated by the belligerent powers to promote their own interest, regardless of the influence that law ought to have on their conduct.

On this ground, they have confined themselves to resisting the effect of local ordinances, detracting from the rights of neutrals; but whether the injury to those rights originated in positive ordinances, or were produced by [*178] *gradually diverging from the line which, consistent with the general maritime law, ought to regulate their conduct, I consider as very immaterial, and cannot, certainly, vary the principles by which it is to be tested.

Neutral powers are interested in repelling every attempt to impair their rights, and in protecting the lawful commerce of their citizens; and, as one of the means of resisting ag-

gression and defending that commerce, in withholding their sanction from every unjust attempt to invade it.

I take it, that there is no essential difference between cases of condemnation produced by arbitrary ordinances, and arbitrary and unfounded extensions of principles, without the aid of ordinances; that both ought to be considered as equally open to examination; and that we ought not, nor does justice or general convenience require us, to close the door, so as to exclude such examinations.

In the case of *Goix* v. *Low*, (1 Johns. Cas. 341,) I entered into a particular examination of all the cases adduced to prove the conclusiveness of foreign sentences; and I stated the rules deduced from them, as laid down by Lord Mansfield, as collected from all preceding cases; and my opinion respecting them, as a general result from the whole.

Tin, in the different shapes in which it is described in this case, is susceptible of application to a great variety of uses; and, with few exceptions, is applied to purposes which have no connection with military or naval equipments. The domestic and ordinary purposes to which it is applied, create a consumption of that article, in a much greater and more extensive degree than any warlike purposes.

If its destination might be permitted to mingle in the circumstances justifying the condemnation, and it had been intercepted on its way to a port in which hostile *preparations in navy yards, or founderies of cannon [\*179] were carried on, these considerations would in this question, operate against the condemnation; for it is expressly admitted, that there was no establishment of the latter description in the West Indies, and the case is silent as to the former: it cannot, therefore, be necessary to trace the reasoning on this subject.

If the extension given to the principle respecting naval and military stores, as laid down in this sentence, is correct, it is difficult to determine what modification of wood or metals can exempt them from so comprehensive a construction. It appears to be palpably misapplied; it is an arbitrary and un-

Vos and Graves v. The United Insurance Company.

founded extension; as such it ought to be disregarded, as affecting the rights of neutrals; and which they are not bound to sanction in their judicial proceedings, as derogatory from those rights.

The policy contains a warranty, that the subject insured shall be free from any charge, damage, or loss, which may arise in consequence of any seizure or detention, *for or on account of any illicit or prohibited trade, or trade in articles contraband of war.*

This warranty is precisely to the point on which the loss happened. The condemnation was expressly on the ground that the articles condemned were *contraband of war.* But the insured had stipulated by their warranty, that all seizures *for or on account of any illicit or prohibited trade,* should not affect the insurers.(*b*)

On this point, respecting the warranty, I therefore concur with the general result, deduced by the rest of the court from the case, that the defendants ought to have judgment.

Judgment for the defendants.(*c*)

---

(*b*) See note to *Delavigne* v. *The United Ins. Co. supra,* vol. 1, p. 313.

(*c*) This judgment was afterwards, (1802,) reversed in the Court of Errors. See *infra,* p. 487.

