*James Johnston and Robert Weir, *Plaintiffs* [*481]
*in Error, against* Daniel Ludlow, *Defendant*
*in Error.*(*a*)

A subject of Great Britain *domiciled* in New York, and engaged in trade from
the United States with the enemies of Great Britain, is considered as a ci-
tizen of the United States in regard to such trade, which is not within the
clause in the policy of insurance by which the property is warranted by
the assured free from any charge, &c. in consequence of a seizure or deten-
tion for or on account of any illicit or prohibited trade, &c.

A sentence of a court of admiralty is only *prima facie* evidence of any fact,
and will have no effect, if sufficient appears in the sentence to rebut the
presumption of the existence of such fact.

To constitute a breach of the warranty by the assured against seizure or de-
tention on account of illicit or prohibited trade, &c. there must be an illicit
or prohibited trade, in fact, existing. It is not sufficient that there has
been a *condemnation* under *pretext* of such a trade.

This cause was brought before this court, by writ of error
from the supreme court. The plaintiffs in error, who were
natives of Great Britain, residing and engaged in trade in
New York, but not citizens of the United States, chartered
the schooner Aurora, of Peter Laing, for a voyage from New
York to La Vera Cruz. A policy of insurance was effected
on the cargo from New York to La Vera Cruz, with liberty
to touch at the Havanna. The assured knew at the time,
that the plaintiffs in error were not American citizens. The
defendant in error also knew, that the *tin* was on board, and
consented to insert in the clause relative to illicit trade, and
after the word detention, the words " of the goods hereby in-
sured," and which were inserted to save the assured, in case
the *tin* should be adjudged contraband. The other facts in
the case were the same as those stated in the case of *Laing*

(*a*) S. C. 1 Caines' Cases in Error, xxix.

v. *The United Insurance Co.* in the supreme court, reported *ante*, p. 174, 179.

The sentence of the judge (Kelsall) of the vice-admiralty court at New Providence, pronounced August 2d, 1799, was as follows :

" The Aurora is an American vessel, bound to La Vera Cruz, by way of the Havanna, whither she is first to go, laden with property purchased and shipped in America. Under these circumstances only, I cannot deem her an adopted vessel ; whatever she may become, she is not yet privileged.

As to the presumption of the property being enemy's, [*482] I think there is some, and indeed *not a little obscurity in the whole transaction. The vessel is entitled to a register, and has it not, nor is any reason shown to account for the deficiency. The multiplicity of needless marks, by which the packages are distinguished ; the many unnecessary invoices, none of which are signed, so contrary to the usages of commerce and the practice of merchants ; the great amount of the charter-party, and the very large quantity of articles, the property of the captain ; the caution with which Weir, the supercargo, swears as to the property, coupled with some part of the master's and mate's answers to the standing interrogatories : these, I say, are what might have induced me to decree further proof, were there not circumstances in the case fully to warrant the decision I have come to on the subject.

" *These are principally the contraband of war, which are on board*, and *the relation the parties who ship them stand in, as well with respect to this particular transaction, as generally to their duty towards Great Britain.* It appears that all the individuals concerned are natural born British subjects, but assume the privilege of trading with the king's enemies, as being citizens of the United States of America.

" 1. Peter Laing, the master, swears that he has sailed out of America sixteen years past ; is a citizen, and resides with his wife and family at New York.

Johnston and Weir v. Ludlow.

" 2. Donald Denoon, the mate, swears he has been admitted a citizen of the United States about twelve months.

" 3. Patrick Weir, the supercargo, swears that he has resided in America four years and considers himself a citizen of the United States, having made application to be admitted as such.

" 4. James Johnston, one of the owners of the cargo, Laing swears is an American citizen, to the best of his knowledge.

*" 5. Robert Weir, the other principal owner of the     [*483] cargo, is sworn by Laing, to be also to the best of his knowlege a citizen, and he moreover swears he has known him five years.

" It therefore results from this evidence, that Patrick Weir is a British subject, that Donald Denoon, cannot, notwithstanding his admission as a citizen of America, be considered such, his case depending, (as far as this court has any thing to do with it,) on *Hughes' case,* already decided ; and that the right to be taken for, and deemed an American citizen, supposing the treaty of amity and commerce to be so conclusive as it is contended to be, is by no means shown, or made out in the cases of James Johnston and Robert Weir. Laing's case is of a different complexion ; he has resided in the American states since 1783 ; and as it may be expected from me, I do not hesitate to add, that after maturely considering the relative situation and connection between Great Britain and America ; and after duly estimating the necessity imposed by the circumstances of the times, on the officers of the admiralty courts, to resist the increase of an evil already carried to an alarming excess, the emigration of British subjects, for the purpose of screening themselves from the general effects of the war their country is engaged in, and of embarking in commercial enterprises, of whatever nature, with the enemy, under the protection of neutral flags ; I do not think that I ought to assume a period earlier than the commencement of the war with France, as the epocha from which the natural born subjects of Great Britain, though naturalized and commorant in a neutral state, are to be viewed

and considered, with respect to their native country, in any other light than as those who remain at home. Those who have settled in America before that period, I must leave in the possession of those rights, which they appear, by [*484] the tacit consent of Great Britain, to have *hitherto exercised unmolested. It would have been on these principles, and on that of not being convinced as to the real ownership of this property, that I should have decreed further proof, with respect to Weir and Johnston, had it not been for the contraband of war, which they have shipped on board this vessel.

" Tin plates are assuredly contraband. They are indispensably necessary to the equipment of all armed vessels, and form a most essential article in ordnance and military stores. Now, though, in this case, the value of them is justly considerable, six hundred pounds, currency, at the least; yet, I confess, it appears to me so strange, that for the sake of the profits on this sum, merchants would endanger a very valuable cargo, that I am induced to think, that Johnston and Weir were only complying with an order, or that Spain insists on a portion of every cargo being contraband, to entitle a vessel to entry in certain ports. Be it however as it may, I must do my duty; a duty in this instance especially incumbent on me rigidly to execute, from the situation those men stand in, with respect to their native country, by enforcing the strict law of nations, as laid down in Lee on Captures, a law which is not altered in any respect by the American treaty, and is conformable to the practice of the high court of admiralty at home, as we know from the highest authority.

" I do, therefore, hereby dismiss the answer and claim, as far as respects the property of Patrick Weir, Donald Denoon, James Johnston and Robert Weir, and condemn the same as lawful prize to the captors.

" I sentence the claimants in costs, and dismiss the libel with respect to the vessel and property of Peter Laing."

On the argument of the cause, three questions were raised for the consideration of the court. 1. Whether the

trade, in regard to the characters of the plaintiffs, *was illicit? 2. Whether *tin* in blocks and plates is an . [*485] article contraband of war ?   3. Whether the warranty contained in the special clause in the policy, in regard to illicit or prohibited trade, or trade in articles contraband of war, extended to a seizure or detention, on the allegation of being engaged in such trade; when, in fact, there was no such trade ?

GOLD, Senator.   On the first point, the *domicil* of the plaintiffs being established here, without any fraudulent motive, but for fair purposes of commerce, this court ought not to sanction the right of Great Britain to seize and confiscate their effects, as has been done in this instance.   The case of *Maryatt* v. *Wilson*, cited from 1 Bos. & Pull. Rep. p. 430, which arose under the article in our late treaty with England, regulating our East India trade, is not inapposite.   In that case, the English court conceded to a native subject domiciled in America, the right of an American citizen, in relation to commerce with the Indies.   On the second point, that there may be circumstances and occasions, in which *tin* in blocks and plates, may become contraband, is not to be controverted ; but while Judge Kelsall professes to detail, not only the causes for condemnation, but those on which he did not ground himself, he does not disclose a case which would warrant the conclusion, upon the article in question, of contraband of war.   He rests himself upon the bare shipment of the article ; this cannot be subscribed to, nor will the allowed effect of the admiralty sentence, as *prima facie* evidence, avail the defendant here ; as the presumption of facts to warrant a condemnation, is repelled by a detail of the precise grounds on which the sentence was pronounced.   On the last point raised by the underwriter, that the warranty protects him against *any loss by seizure or detention, for, or on account of any illicit trade or contraband of war*, nothing *in this provision is relevant to the   [*486] case before the court.   The clause literally extends only to partial losses occasioned by a seizure or *temporary detention*, not followed by a *condemnation ;* and if extended

farther, it cannot have been the intention of the parties to the policy to throw upon the assurer a loss, where there could be no fault in him; when no illicit trade or contraband existed in fact, merely because a pretext of that kind is set up to cloak the condemnation. The expression, "*for and on account of*," is not equivalent or convertible into the words *under pretence of*, but may well be understood to mean *for the cause of ;* implying the actual existence of either illicit trade or contraband, as producing such loss or damage. No other construction ought to be admitted, unless the language of the contract is plain and unequivocal, necessarily inducing a contrary interpretation. The facts in the cause do not, as the law is now settled in Great Britain, bear out the conclusion of the vice-admiralty court; nor can any thing in the warranty of the assured protect the underwriter. I am of opinion that the judgment of the court below ought to be reversed.

This being the opinion of a majority of the court, it was thereupon ORDERED and ADJUDGED, that the judgment of the supreme court be reversed; and that the plaintiffs in error recover the sum assessed by the jury in the special verdict, as for a total loss ; and that the court below tax the costs for the plaintiffs in error, as if judgment had been given for them as for a total loss; and that the plaintiffs in error also recover interest on the judgment so found for a total loss, from the time of rendering the judgment in the supreme court, until the third Tuesday of April next, to be assessed and taxed by the clerk of this court, and that the record be remitted, &c.

Judgment of reversal.(*b*)

(*b*) See 1 *Phillips* on Insurance, 712, 715 ; 2 id. 698.   2 *Duer* on Insurance, 633, and n. (*a*) and 3 id. under the head of Excepted Risks.