UTICA,
Aug. 1825.

Andrews
v.
Herriot.

**ANDREWS AND JEROME *against* HERRIOT.**

Covenant will not lie in this state, on a contract to be performed in Pennsylvania, with a *scrawl and the word seal* in th' *locus sigilli*, tho' by the law of that state, this constitutes a seal.

The form of the action relates to the remedy, and is governable by the *lex fori.*

ACTION of covenant tried before THROOP, C. Judge, at the Onondaga Circuit, 1823. The declaration was in covenant on a contract between the parties, to be performed in the state of Pennsylvania. Plea, *non est factum.*

On the trial, the contract offered in evidence was signed with the name of Herriot; but instead of wafer or wax, there was a scrawl with the word *seal* in the *locus sigilli;* and the concluding words of the contract purported a seal in the usual form. A counsellor at law, of the state of Pennsylvania, was sworn as a witness for the plaintiff, and testified that, by the common law of that state, such a mark was a *seal.*

The defendant's counsel objected to the contract being read in evidence; but the objection was overruled, and the contract read to the jury.

A verdict was finally taken for the plaintiff, subject to the opinion of the Court, upon this and other points which arose in the course of the trial.

*V. Birdseye,* for the plaintiff, insisted that, as the contract was to be performed in Pennsylvania, the Court would notice the law of that state in giving it a construction. The *effect* of the instrument, not merely the *remedy* upon it, is the question; and the *lex loci* applies. *Meredith* v. *Hinsdale,* (2 Caines' Rep. 362,) is in point. That was an action of debt upon a Pennsylvania bond; and it was sustained upon the very ground assumed here. The contract should be carried into effect according to the intention of the parties. They intended that it should operate as a specialty every where. That the law of the state where the contract is to be performed shall govern, without regard to the place of its execution, is abundantly proved by the authorities. (*Thompson* v. *Ketcham,* 4 John. Rep. 285, and the cases there cited.) This law settles the *nature* and *effect* of the contract. It is important that it should be so, for a variety of reasons; and one is, for preserving due preference in the distribution of

the estates of deceased persons. The *remedy* is another thing. On determining the degree of the contract, that is left to our own law ; so that the *lex fori* is not affected. On determining that the scrawl is a seal, the *lex fori* comes in, and says that the action should be covenant, a *remedy* already known to the law of the state. The agreement, therefore, gives no new *remedy*.

The case of *Warren* v. *Lynch*, (5 John. Rep. 239,) although it denies that, according to our own law, any thing short of wax or wafer will constitute a seal, leaves *Meredith* v. *Hinsdale* unimpaired as to the only point decided by it.

He also cited *Jones & Temple* v. *Logwood*, (1 Wash. Rep. 42 ;) *Baird & Briggs* v. *Blaigrove*, (id. 170 ;) *Austin's Admx.* v. *Whitlock's Exrs.* (1 Munf. 487 ;) *Newbold* v. *Lamb*, (2 South. Rep. 449 ;) *Adam* v. *Kers*, (1 B. & P. 360 ;) *United States* v. *Coffin*, (Bee's Rep. South Carolina, 140 ;) and Jac. L. Dict. *Seal*.

Mr. Birdseye was proceeding to the other points in the cause ; but the Court told him they were impressed so strongly against him, upon the one which he had already argued, that he need not proceed farther for the present. But, as the point was an important one, they would look into it farther, and examine the cases cited ; and if they should then entertain any doubt, they would call upon him to resume his argument

*N. P. Randall*, for the defendant, referred the Court to *Jackson* v. *Wood*, (12 John. Rep. 72 ;) *Scoville* v. *Canfield*, (14 John. Rep. 338 ;) 1 Phil. Ev. 415, 16, note, (*a*) and the cases there cited ; and *Whittemore* v. *Adams*, (2 Cowen's Rep. 626.)

On the same day, at the commencement of the afternoon session,

The CHIEF JUSTICE informed Mr. Birdseye, that the Court had examined the question during their recess ; that Mr. B. was fully supported by *Meredith* v. *Hinsdale*, if that were now to be received as law ; but the current of author-

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

ity, since the decision of that case, had been uniform and unbroken, that the *lex loci contractus* governs only as to the *construction of the contract ;* and has nothing to do with the *remedy*, which is controlled entirely by the *lex fori,* We are satisfied that *Meredith* v. *Hinsdale* was decided without proper attention to this distinction. The dispute is merely upon the *remedy*, that is to say, whether the ac- tion shall be *covenant* or *assumpsit* upon a given contract, between two persons within the jurisdiction of the Court. The *substance* and *effect* of the recovery is the same in either form. We are satisfied that we cannot sanction *Meredith* v. *Hinsdale*, without overturning the entire class of cases which distinguish between the different effects of the *lex loci* and *lex fori.* We are so firmly fixed in the conclusion to which we have come, that it will be useless to argue the other points. Being against the plaintiff upon the first, this decides the cause.

Judgment for the defendant.(a)

(a) The *lex loci* and *lex fori*, to which the above case looks, have proba- bly come more frequently under review in this country than in any other. That the attention of our courts should often be drawn to them, results from the political confederacy of the states, which, while it supports among them close and extensive connections in business and policy, yet holds them suffi- ciently distinct and independent to call into continual exercise that rule which expounds and gives effect to contracts, and other transactions, according to the state law under which they are made, or take place ; but stops there, and carefully distinguishes between *construction* and *right*, on the one hand, and *remedy* on the other. The general rule is acknowledged by the law of na- tions, and by all the local writers and adjudications relating to it ; but the dif- ficulty of its application has been very considerable. Hence the great va- riety of cases and comments to which it has given rise, the embarrassments of the most able and ingenious counsel, and the importance of looking with attention to the rules and adjudged cases upon the subject, not only of Eng- land, and other foreign countries, but of sister states, and especially of the United States, whose courts are, on this head, emphatically the arbiters of state differences.

This subject in itself deserves a treatise, but I can do nothing more here than to arrange and refer to the authorities, giving the substance of some of them. Huberus, *in his title De conflictu legum*, has broken the ground the most effectually, I believe, of all the European writers ; but even yet, it must be considered as but little more than broken for the use of the Ame- rican student. Mr. Wheaton, *arg.* (3 John. Ch. Rep. 202,) speaks of Huber as having originated the distinction between the *lex fori* and the *lex loci*

*contractus*, and his remarks on the *lex loci* generally are well known to form the text upon which our lawyers proceed.    Lord Mansfield used to cite him with approbation, and Mr. Hargrave declared that his writings on the civil law were much esteemed.    (Note 44 to Co. Litt. 79, *b.*)    He was quoted, approved and relied upon in *Desesbats* v. *Berquier*, (1 Bin. 336,) and the late Chancellor Kent, in *Holmes* v. *Remsen*, (4 Johns. Ch. Rep. 469,) says that Huber's essay, " *de conflictu legum* is every where received as containing a doctrine of universal law."    In truth, he is referred to as authority in almost every case where the *lex loci* has been seriously in question.    A sufficient extract, for the purposes of the present subject, was translated, and read in the argument of *Emory* v. *Grenough*, (3 Dall. 369, 370 ;) and furnished by Mr. Dallas, the reporter, in a note to that case, (id. p. 370 to 377.)    Thus being very generally in the hands of the profession, it need not be repeated here.    Suffice it to say, that this extract takes ground broad enough to embrace the whole superstructure of European and American authority relative to the *lex loci* and *lex fori*.    It is true that some few of his examples have been overruled by our cases, owing to his erroneous application of principles ; but this is no more than will be found true of several cases adjudged upon the same principles, in England, Scotland, and this country.

The cases divide themselves into several classes :

1. *The lex loci contractus.*]    The general proposition upon this head will be found in almost all the cases from which I shall extract the point decided ; but it is more generally laid down, and supported, as follows : that the law of a place where a contract is made, or to be performed, is to govern as to the *nature, validity, construction,* and *effect* of such contract ; that being valid in such place, it is to be considered equally valid, and to be enforced every where, with the exception of cases in which the contract is immoral or unjust, or in which the enforcing it in a state would be injurious to the rights, the interest or convenience of such state or its citizens ; and, on the contrary, if a contract be *void,* or be *discharged* by the law of the place where it is made or to be performed, it is to be considerd as void or discharged every where, and to be enforced no where.    (Hub. *ubi supra,* 3 Dall. 371, note.    *Pearsall* v. *Dwight,* 2 Mass. Rep. 84.    *Green* v. *Curtis,* 6 id. 358. *Blanchard* v. *Russell,* 13 id. 1.    *Prentiss* v. *Savage,* 13 id. 20.    *Inh. of Medway* v. *Inh. of Needham,* 16 id. 157.    *Inh. of West Cambridge* v. *Inh of Lexington,* 1 Pickering's Rep. 506.    *Lodge* v. *Phelps,* 1 Johns. Cas. 139.    *Smith* v. *Smith,* 2 Johns. Rep. 235.    *Ruggles* v. *Keeler,* 3 id. 263. *Thompson* v. *Ketcham,* 4 id. 285.    8 id. 189.    *Warder* v. *Arell,* 2 Wash. Rep. 282.    *Van Reimsdyck* v. *Kane,* 1 Gall. 375.    *Sherrill* v. *Hopkins,* 1 Cowen's Rep. 103, and several cases there cited by Sutherland, J. p. 105, 6, 7, 8, 9.    *Powers* v. *Lynch,* 3 Mass. Rep. 77.    *Baker* v. *Wheaton,* 5 id. 509. *Grimshaw* v. *Bender,* 6 id. 157.    *Winthrop* v. *Carlton,* 12 id. 4.    *Hull* v. *Blake,* 13 id. 153.    *Barrell* v. *Benjamin,* 15 id. 354.    · *Watson* v. *Bourne,* 10 id. 337.    *Van Schaick* v. *Edwards,* 2 Johns. Cas. 355.    *Courtois* v. *Carpentier,* C. C. April, 1806, MS.    Whart. Dig. *Foreign Laws, &c.* pl. 5.    *Smith* v. *Mead,* 3 Con. Rep. N S. 253.    *Medbury* v. *Hopkins,* id. 472.    *Male* v. *Roberts,* 3 Esp. Rep. 163    *Harper* v. *Hampton,* 1 Harris & Johnson's Rep. 453.    Id. 662, S. C.)

But as the laws of contracts, &c. in foreign states or countries are not admitted ex proprio vigore, but only ex comitate, the judicial power wil. exercise a discretion with respect to the laws they may be called upon to sanction ; for if they be manifestly unjust, or calculated to injure their own citizens, they ought to be rejected. (Blanchard v. Russell, 13 Mass. Rep 6, per Parker, C. J.) Accordingly an exception is, where it would be dangerous, or inconvenient, or of immoral tendency to enforce the foreign contract. (3 Dall. 371, note. Pearsall v. Dwight, 2 Mass. Rep. 89. Prentiss v. Savage, 13 id. 25.)

In pursuance of the above rules, a contract of marriage, though it would be invalid by our law, will yet be held valid here, if so by the law of the country where celebrated, unless indeed it be incestuous by the law of nature. (3 Dall. 373, 4, note. Ilderton v. Ilderton, 2 H. Bl. 145. Compton v. Bearcroft, Bull. N. P. 114. Inh. of West Cambridge v. Inh. of Lexington, 1 Pickering's Rep. 506. Greenwood v. Curtis, 6 Mass. Rep. 378, per Parsons, Ch. J. Inh. of Medway v. Inh. of Needham, 16 id. 157. Decouche v. Savetier, 3 Johns. Ch. Rep. 190. Gordon, alias Dalrymple, v. Dalrymple, before the Consistorial Court of London, Dodson's Report, 6, per Sir W. Scott.)

And the rights and incidents of the marriage, in the country where celebrated, shall follow and be allowed every where ; as communion of goods, common risk of profit and loss, donation mutuelle, dower, jointure, inheritance, &c. (Id. and vid. Royal Bank of Scotland v. Cuthbert, 1 Rose's Cas. Bank. App. 481, per Ld. Meadowbank.)

A sale of goods, (e. g. negroes,) by one in a foreign country, lawful there, though interdicted in Massachusetts, will be enforced, or upheld by the Courts of Massachusetts. (3 Dall. 372, note. Greenwood v. Curtis, 6 Mass. Rep. 358, 378.) So if one lawfully, in a foreign country, sell goods in a manner, or on grounds which would not be lawful here, our Courts will uphold the sale. (Grant v. M'Lachlin, 4 Johns. Rep. 34.)

Personal rights obtained or communicated by the law of a place accompany the person. Thus, if one of the age of 21 may convey his real estate in the country where he comes to that age, he may do the same where 25 years are required. (3 Dall. 375, 6, note.) But whether the right to convey real estate do not come within the lex loci rei sitæ, post ; and whether this rule extend beyond personal estate ? Quære.

The rate of interest or damages is governed by the lex loci. (1 Dall. 191, per Shippen, President. Slacum v. Pomeroy, 6 Cranch, 221. Winthrop v. Pepoon, 1 Bay's Rep. 468. Lanusse v. Barker, 3 Wheat. Rep. 101, 146. Kissam v. Burrall, Kirby's Rep. 326. Fanning v. Consequa, 17 Johns. Rep. 511. James v. Allen, 1 Dall. 191. Winthrop v. Carleton, 12 Mass. Rep. 4. Gaillard ads. Ball, 1 Nott & M'Cord's Rep 67.)

So one's liability as maker, endorser, acceptor, or other party to a promissory note or bill of exchange. (Powers v. Lynch, 2 Mass. Rep. 77. And vid. Hicks v. Brown, 12 Johns. Rep. 142, 3. Slacum v. Pomeroy, 6 Cranch, 221. Hull v. Blake, 13 Mass. Rep. 153.)

So a construction of foreign marriage settlements (Cowp. 174. Feaubert v. Turst, Prec. in Ch. 207.)

*So the terms of payment*, between a captain and his crew ; (*Johnson* v. *Machielsne*, 3 Campb. Rep. 44 ;) the time when a suit shall be brought for seaman's wages ; (id. ;) and *time* of payment of a bill of exchange. (Chit. on Bills, Phil. ed. of 1821, p. 120, 1, and the authorities there cited.)

*A note* given in Massachusetts, as a premium on a policy of insurance, on a vessel engaged in the African slave trade, being void by the law of that state, is void in South Carolina. (*Touro* v. *Cassin*, 1 Nott & M'Cord's Rep. 173.) *A note* void for *usury* in Massachusetts is so here. (*Van Schaick* v. *Edwards*, 2 Johns. Cas. 355. If *void* for *gaming* in France, it is so in England, (*Robinson* v. *Bland*, 2 Burr. 1077.) The *acceptance* of a bill of exchange at Leghorn, void there, held so in England. (*Burrows* v. *Jemino*, 2 Str. 732.)

*So a sale* or *agreement to sell* goods in a foreign country, prohibited by its laws, (3 Dall. 372, note,) is void every where.

*But foreign revenue laws* will not be noticed here ; and, accordingly, a foreign contract, void for *want of a stamp* where made, will not, for that reason, be held void here. (*Ludlow* v. *Van Rensselaer*, 1 Johns. Rep. 94. But vid. *Alves* v. *Hodgson*, 7 T. R. 237, and *Clegg* v. *Levy*, 3 Campb. Rep. 166, *contra*. Yet if the contract, thus made void by the *revenue law* of a foreign country, is to be executed there, or one is carrying on business with that country, and violates its revenue laws, the Courts of that country will not aid him to enforce such contract. (*Scriba* v. *Ins. Co. of North America*, C. C. Oct. 1807. Whart. Dig. *Foreign Laws, &c.* p. 287, pl. 3.)

*Nor shall the penal laws or laws of forfeiture* in one's country operate upon his rights or liabilities in another. (*Folliott* v. *Ogden*, 1 H. Bl. 123, 135. *Scoville* v. *Canfield*, 14 Johns. Rep. 338. *Warder* v. *Arell*, 2 Wash. Rep. 295, per Roane, J. *Commonwealth* v. *Green*, 17 Mass. Rep. 515. *Inh. of West Cambridge* v. *Inh. of Lexington*, 1 Pick. Rep. 506.) Yet it was held in *Camp* v. *Lockwood*, (1 Dall. 393,) that one whose property had been confiscated in Connecticut, could not, in Pennsylvania, recover a debt embraced by the act of confiscation : and vid. *Negro David* v. *Porter*, (4 Harris. & M'Henry's Rep. 418.

*Personal disabilities* follow the person. Thus, when young men, prodigals, married women, &c. of a country are considered subject to curators by the law, or unable to contract, they are to be so considered elsewhere, both in their rights and disabilities ; (3 Dall. 375, 6 ; *Thompson* v. *Ketcham*, 8 Johns. Rep. 189 ; *Male* v. *Roberts*, 3 Esp. Rep. 163 ;) and if they be unable to commit crimes in Friezeland, it is the same thing in Holland, (3 Dall. 375-6, note.)

*Authorities*, showing that a contract shall be explained, &c. by the law of the *place* where it is to be *performed ;* and the rules by which we are to determine the *place* of *performance*. (*Lanusse* v. *Barker*, 3 Wheat. Rep. 101, 146. *Robinson* v. *B'and*, 1 Bl. Rep. 247, 258. 2 Burr. 1077, S. C. *Melan* v. *Duke of Fitz James*, 1 B. & P. 138. *Searight* v. *Calbraith*, 4 Dall. 324, 327. *Van Reimsdyk* v. *Kane*, 1 Gall. 371, 375. *Ludlow* v. *Van Rensselaer*, 1 Johns. Rep. 94. *Smith* v. *Smith*, 2 Johns. Rep. 235. *Thompson* v. *Ketcham*, 8 id. 189. *Harrison* v *Sterry*, 5 Cranch, 289 *Slacum* v. *Pomeroy*, 6 id. 221. *Fanning* v. *Consequa*, 17 Johns. Rep. 511.

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

*Sherrill* v. *Hopkins,* 1 Cowen's Rep. 103, 108. 3 Dall. 374, note. *Powers* v. *Lynch,* 3 Mass. Rep. 77. *Scriba* v. *Ins. Co. of North America,* C. C. October, 1807. Whart. Dig. *Foreign Laws, &c.* p. 287. pl. 3. *Coolidge* v. *Poor,* 15 Mass. Rep. 427. *Champant* v. *Ranelagh,* Prec. in Ch. 128. Eq. Cas Abr. *Interest Money,* (E,) and the cases there cited. *Ranelaugh* v. *Champante,* 2 Vernon, 395. *Smith* v. *Mead,* 3 Con. Rep. N. S. 353. *Potter* v. *Brown,* 5 East, 124. *Harper* v. *Hampton,* 1 Harris & Johnson's Rep. 453. Id. 622, S. C. *Touro* v. *Cassin,* 1 Nott & M'Cord's Rep. 173. *Lewis* v. *Fullerton,* 1 Randolph's Rep. 15, 23.)

*The discharge of, or defence against* a contract, in the place where it is made or to be performed, is the same every where. Thus, if *infancy* be a defence against a contract made in Jamaica, it is so here ; (*Thompson* v. *Ketcham,* 8 Johns. Rep. 189 ;) or if against a contract made in Scotland, it is so in England. (*Male* v. *Roberts,* 3 Esp. Rep. 163.) If a *tender and refusal,* in the country where the contract is made, produce a forfeiture of the debt, it is so every where. (*Warder* v. *Arell,* 2 Wash. Rep. 282, 295, &c.) A *South Carolina* contract *paid in paper money* there, which depreciated, was held a payment in England ; (*Anon.* 1 Br. Ch. Cas. 376 ;) and a *tender in assignats,* upon a contract made in France, being lawful there, was held lawful in Pennsylvania. (*Searight* v. *Calbraith,* 4 Dall. 325, 327.) So *a tender of bills* on the Vermont state bank in Connecticut, upon a note payable to the bank, pursuant to a statute of Vermont. (*Vermont State Bank* v. *Porter,* 5 Day's Rep. 316.) *The promissory note of a third person* taken for goods sold in New York, the maker becoming insolvent before the day of payment, being a discharge in New York, where the contract was made, was held to be so in Connecticut. (*Bartsch* v. *Atwater,* 1 Con. Rep. N. S. 409.)

*A voluntary payment of a debt* by a citizen of this state to an *executor* or *administrator,* regularly appointed by a foreign government, though he could not sue here, *it seems,* shall be held valid, and protect the debtor against a second suit for the same money. (*Williams* v. *Storrs,* 6 Johns. Ch. Rep. 353 *Doolittle* v. *Lewis,* 7 id. 45.)

*Discharges of contracts by operation of law,* are also governed by the *lex loci contractus.* In *Quin* v. *Keefe,* (2 H. Bl. 55,) the question arose whether an Irish bankrupt certificate of discharge from a contract made in Ireland, was a discharge in England. The point was treated as a novel one in the C. B. and went off upon a formal defect in the plea. Since that time, the effect of *foreign bankrupt certificates* and *insolvent discharges* has been the subject of much discussion, both in foreign nations and in the United States ; and the attention of courts has been mainly drawn to two different branches of the proceeding, viz. the assignment or *cessio bonorum,* contested between the assignees and particular creditors who were seeking satisfaction by foreign attachment or other proceeding against the bankrupt or his goods ; or the *discharge,* contested between particular creditors and the bankrupt.

*The assignment* of the *bankrupt* or *insolvent,* is at length considered as a general sale of goods by his own act *bona fide,* and available like any other honest sale against all who claim by lien or sale subsequent. This depends

upon the *lex domicilii* and will be considered under that head in its due order.

*The certificate or discharge,* we have said, depends upon the *lex loci contractus, i. e.* the law of the place where the contract is made, or to be performed. Thus, the drawer of a bill of exchange at Baltimore on London, (though payable to a British subject resident in England,) having been declared a bankrupt, and discharged from his debts as such, this was holden to bar an action in the English K. B. And the case was expressly put on the ground, that the cause of action having arisen in the United States, and the contract not to be performed elsewhere, and having been followed by a discharge here, it should be deemed discharged every where. (*Potter* v. *Brown,* 5 East, 124.) The earlier cases of *Ballantine* v. *Golding,* (Cooke's Bank. Law, 515,) and *Smith* v. *Buchanan,* (1 East, 6,) proceeded upon the same principle. In the latter case, an insolvent discharge of Maryland was denied any effect upon a debt contracted in England; the other common law cases have almost uniformly gone upon the same distinction. (*Van Raugh* v. *Van Arsdaln,* 3 Caines' Rep. 154. *Ewart* v. *Coulthard,* cited id. 154, 5. 1 Johns. Rep. 119, per Spencer, J. *Watson* v. *Bourne,* 10 Mass. Rep. 337. *M'Millan* v. *M'Neill,* 4 Wheat. Rep. 209. *Smith* v. *Smith,* 2 Johns. Rep. 235. *Hicks* v. *Hotchkiss,* 7 Johns. Ch. Rep. 297. *Mather* v. *Bush,* 16 Johns. Rep. 238. *Blanchard* v. *Russell,* 13 Mass. Rep. 1. *Bradford* v. *Farrand,* id. 18. *Walsh* v. *Farrand,* id. 19. *Proctor* v. *Moore,* 1 Mass. Rep. 198. *Clarke's ex'rs* v. *Van Reimsdyk,* 9 Cranch, 153. *Millar* v. *Hall,* 1 Dall. 229. *Hicks* v. *Brown,* 12 Johns. Rep. 142. *Babcock* v. *Weston,* 1 Gallis. Rep. 168. *Van Reimsdyk* v. *Kane,* 1 id. 371, 377, 380. *Baker* v. *Wheaton,* 5 Mass. Rep. 509. *Harris* v. *Mandeville,* 2 Dall. 256. *Green* v. *Sarmiento,* 1 Peters' Rep. 74. *M'Menomy* v. *Murray,* 3 Johns. Ch. Rep. 435. *Buel* v. *Shethar,* cited in 3 Day's Rep. 82. *Smith* v. *Brown,* 3 Bin. Rep. 201. *Walsh* v. *Nourse,* 5 id. 381. *Vanuxem* v. *Hazlehursts,* 1 Southard's Rep. 199 to 202, per Kirkpatrick, C. J. *Rowland* v. *Stevenson,* 1 Halsted's Rep. 149.)

*Stein's case, in the Court of Session,* Scotland, went farther, and gave an English bankrupt certificate the effect to discharge all debts arising either in in England or Scotland. (1 Rose's Cas. Bank. app. 462. The effect of the certificate is mentioned at p. 486; and vid. *M'Kim* v. *Marshall,* 1 Harris & Johns. Rep. 101, and *Harrison* v. *Young,* id. 102, note.)

*It was formerly holden* that *a discharge* under an insolvent law of this state, was, upon the *express words* of the statute, a discharge from *all contracts,* wherever made ; (*Penniman* v. *Meigs,* 9 Johns. Rep. 325 ;) but that case has since been *overruled as unconstitutional* by *M'Millan* v. *M'Neill,* (4 Wheat. Rep. 209 ;) and the operation of the *lex loci contractus* restored in all its force. (*Hicks* v. *Hotchkiss,* 7 Johns. Ch. Rep. 297, 312. *Mather* v. *Bush,* 16 Johns. Rep. 233. *Sherill* v. *Hopkins,* 1 Cowen's Rep. 103.)

*But a statute of the United States* may still give *a universal effect* to a discharge, without regard to *the place* where the contract was made. (*Murray* v. *De Rottenham,* 6 Johns. Ch. Rep. 52. *Harrison* v. *Sterry,* 5 Cranch, 289, and vid. 4 Johns. Ch. Rep. 488.)

*An insolvent discharge, even at the place of the contract,* shall *not always* operate *to discharge it,* where the creditor is without the jurisdiction of the law by which it is granted. Thus, *a temporary insolvent law of* Jamaica, by which debtors were released from all demands against them on surrendering their effects for the benefit of their creditors, the effects to be distributed only among such creditors as should apply within thirty days after public notice of the surrender, was holden inoperative as to a creditor residing in Massachusetts, though the contract was made in Jamaica, and to be performed there. The Court put it on the ground that such a law could not be intended by the legislature to operate beyond the bounds of Jamaica; the act being manifestly partial or unjust to foreign creditors, the notice being short, and no provision being made that it should reach them, in such season as would enable them to participate in its advantages. (*Prentiss* v. *Savage,* 13 Mass. Rep. 20.) The comity of nations does not require that such a discharge should have effect in a foreign country. The fair principles of the contract would be violated by it. (Id. 34.) The same principles were recognized in *Tappan* v. *Poor,* (15 Mass. Rep. 419.) In order to take effect, the foreign discharge must, though granted where the cause of action arose, have been complete and executed before action commenced. If granted after, it is not pleadable like a domestic discharge. (Id.)

2. *Of the lex domicilii.*] The first question which occurs under this head is, *what shall constitute the domicil of the person,* so as to give effect to its law? In most cases, this is of easy solution; but it is not always so. *The general rules* will be found accurately and fully laid down by Rush, President, in *Berquier* v. *O'Daniel,* (1 Bin. 349, 351, note,) or more broadly by Ld. Thurlow, in *Bruce* v. *Bruce,* in the House of Lords, (2 B. & P. 230, note.) They are, that a man's being at a place is *prima facie* evidence that he is domiciled there; and those who contest this may show that he was there as a traveller, or on particular business, or on a visit, or for the sake of his health, &c. (Id.) His mode of living is not material, whether on rent, at lodgings, or in the house of a friend. The apparent or avowed intention of constant residence, not the manner of it, constitutes the domicil. Minute circumstances, in inquiries of this sort, are taken into consideration; as a man's immediate employment; his general pursuits and habits of life, his friends and connections. There is no fixed period of time necessary to create a domicil. It may be acquired after the shortest residence under certain circumstances; and under others, the longest residence may be insufficient for the purpose. Though declarations are good evidence that one has changed his domicil, yet no fixed views of change can be equivalent to the actual abandonment of one domicil, and the acquisition of another. The domicil of origin arises from birth and connections. A minor, during pupilage, cannot acquire a domicil of his own. It follows that of his father, and remains until he acquires another, which he cannot do until he becomes a person *sui juris.* (2 Bin. 251–2, note. *Somerville* v. *Somerville,* 5 Ves. 750.) The domicil of origin remains until clearly abandoned, and another taken. (*Somerville* v. *Somerville,* 5 Ves. 750.) Lord Somerville had two domicils, the family seat in Scotland, and a leasehold house in London; and, upon circumstances, the

former, which was also the domicil of origin, prevailed. (Id.) Where the father is dead, the domicil of the children follows that of the surviving mother. (*Potinger* v. *Wightman*, 3 Merivale's Rep. 67.)

The four cases above cited from 2 B. & P. 230, 1 Bin. 349, note, 5 Ves. 750, and 3 Mer. 67, contain together a complete treatise on what is to constitute a domicil, both in the view of our own and foreign jurists, with full references and illustrations. Instead of repeating these, I refer to the cases themselves.

*The domicil being ascertained,* "It is," says Ld. Loughborough, " a clear proposition, not only of the law of England, but of every country in the world, where law has the semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no visible locality, but that it is subject to that law which governs the person of the owner. With respect to the disposition of it, with respect to the transmission of it, either by succession or the act of the party, it follows the law of the person. The owner in any country may dispose of his personal property. If he dies, it is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession. For instance, if a foreigner having property in the funds here, dies, that property is claimed according to the right of representation given by the law of his own country."

*Sill* v. *Worswick*, (1 H. Bl. 690,) *Bruce* v. *Bruce*, (2 B. & P. 229, note,) *Guier* v. *O'Daniel*, (2 Bin. 349, note,) *Somerville* v. *Somerville*, (5 Ves. 750,) *Potinger* v. *Wightman*, (3 Mer. 67,) before cited, and *Stevens* v. *Gaylord*, (11 Mass. Rep. 256,) *Pipon* v. *Pipon*, (Ambl. 25,) *Thorne* v. *Watkins*, (2 Ves. sen. 35,) *Milne* v. *Moreton*, (6 Bin. Rep. 361, per Tilghman, C. J.) *Balfour* v. *Scott*, (6 Br. P. C. 550, Toml. ed.) *Harvey* v. *Richards*, (1 Mason's Rep. 381,) also recognize these principles, and apply them to *questions of distribution of intestates' estates.* arising between different countries.

The same principles are recognized in *Dixon's Executors* v. *Ramsay's Executors*, (3 Cranch, 319,) and *Decouche* v. *Savetier*, (3 Johns. Ch. Rep. 190,) Jac. Law Dict. *Domicile*, and Vattel, b. 2, ch. 8, s. 108, 9, 10, 11. So in *Desebats* v. *Berquier*, (1 Bin. Rep. 336,) which held that a *will of personal property* must be *executed* according to the *lex domicilii;* and that if void by that law, it will not pass personal estate in another country, though executed with all the formality of its laws. (3 Dall. 371-2, note, S P.)

*These principles are also fully examined* in *Holmes* v. *Remsen*, (4 Johns. Ch. Rep. 460 ;) and at p. 474, mentioned as applicable to the estates of lunatics, on the authority of Lord Hardwicke.

*Various other cases give the general doctrine, and apply it in different ways.* (*Burn* v. *Cole*, Ambl. 415. *Bempde* v. *Johnstone*, 3 Ves. jun. 198. *Hog* v. *Lashley*, 6 Br. P. C. 577. *Drummond* v. *Drummond*, id. 601. *Richards* v. *Dutch*, 8 Mass. Rep. 506. *Dawes* v. *Boylston*, 9 id. 337. *Case of a British legacy to the wife of a foreign husband* mentioned by the Lord Chancellor in *Campbell* v. *French*, 3 Ves. 323. *Latimer* v. *Elgin*, 4 Dess. Rep. 26, 31, 2, *upon a title to slaves.*)

In *Harvey* v. *Richards*, (1 Mason's Rep. 408,) Story J. *refers to severa. books of the civil law, and foreign jurists,* upon this subject, as well as to several of the common law cases.

*The question is* (id. 409, &c.) *taken up and discussed, as to how far it is the right and duty of a foreign forum to decree distribution according to the law of another country, and whether it is bound to dismiss a suit for that purpose and turn the parties round to the Courts of the intestate's domicil.* In 1 Mason, 409 to 430, the cases upon this point in England, Pennsylvania and Massachusetts, which are apparently conflicting, are considered and reconciled ; and the conclusion is, that the Courts of one country may decree distribution according to the laws of another ; but that, under certain circumstances, they should not do this ; as where full justice cannot be done for want of parties, &c. in which case, they may direct assets to be remitted, to be distributed by the tribunal of the domicil, &c.

*But the greater share of litigation upon this head has grown out of the conflicting regulations of different commercial countries relative to bankrupts ;* and is usually grounded on the effect due to the claims of assignees under *bankrupt laws* and *statutes of insolvency.* The rights of the *assignees* have generally. been considered in reference to some *particular creditor* of the bankrupt, who, after an act of bankruptcy, or assignment at the domicil of the bankrupt, commences a suit in a foreign country, either against the person of the bankrupt in the ordinary way, upon his going into that country, or (more generally) by foreign attachment, or other process against the bankrupt's property there in possession or in action.    In *Sill* v. *Worswick*, (1 H. Bl. 665,) for instance, both the *bankrupt* and *creditor* being *residents* of England, the latter, after an act of bankruptcy, but before the assignment, sent to his agent in the island of ·St. Christopher, and attached and ˙obtained payment of his own debt, which was contracted in England, from a debt due to the bankrupt in St. Christopher.    The assignees in England sued the creditor there for the money, as money had and received to their use ; and they recovered upon the principles before cited at large from that case, as laid down by Lord Loughborough.    He applied the *lex domicilii* to the case of the bankrupt, considering the assignment in the same light as a voluntary one made by him ; (*Holmes* v. *Remsen*, 4 Johns. Ch. Rep. 487, same proposition vindicated ;) and, therefore, as passing all his property every where, and among it, the very debt of the bankrupt, which the creditor had collected by the process of foreign attachment.    The avails of it were, consequently, money had and received to the use of the assignees.    The same doctrine was held upon a foreign attachment taken out *after assignment* in England, in *Hunter* v. *Potts*, (4 T. Rep. 182.)    Here, at page 192, Lord Kenyon acknowledges and vindicates the *lex domicilii* as the foundation of his opinion.    In *Solomons* v. *Ross*, and *Jollet* v. *Duponthieu*, (1 H. Bl. 131, 2, note,) the same principles were applied by the English Court of Chancery.    These cases preferred a bankrupt assignment in Holland, to a foreign attachment in England.    *Neal* v. *Cottingham*, (2 H. Bl. 132, note,) preferred an English bankrupt assignment to a foreign attachment in Ireland.    These cases given in the note to H. Bl. do not profess to inquire whether the creditor was *domiciled* in the same country with the bankrupt, or not ; nor of the *place* where the debt arose.

Lord Loughborough's reasoning in *Sill* v. *Worswick*, (1 H. Bl. Rep. 693,) shows how far the rule is to be qualified by the law of the foreign country. He says, " It by no means follows that a commission of bankrupt has an operation in another country, against the law of that country. I do not wish to have it understood, that it follows, as a consequence from the opinion I am now giving, (I rather think that the contrary would be the consequence of the reasoning I am now using,) that a creditor in that country, not subject to the bankrupt laws, nor affected by them, obtaining payment of his debt and afterwards coming over to this country, would be liable to refund that debt. If he had recovered it in an adverse suit with the assignees, he would clearly not be liable. But if the law of that country preferred him to the assignee, though I must suppose that determination wrong, yet I do not think that my holding a contrary opinion would revoke the determination of that country, however I might disapprove of the principle upon which the law so decided. But another case may possibly occur, of a suit brought against the bankrupt personally; and a case of this sort was stated in the argument, *Waring and others* v. *Knight.* I have not been able to get a particular account of that case. It is shortly stated in Cooke's Bank. Law, 372, that a person having committed an act of bankruptcy, had gone over to Gibraltar, that a commission of bankrupt was taken out against him, and that the defendant brought an action against him in Gibraltar, and obtained judgment, and under the judgment, payment of his debt. Whether the person was resident in Gibraltar prior to the bankruptcy, whether the debt was contracted at Gibraltar, whether he appeared to the commission in England, none of these circumstances are stated. But the decision would undoubtedly be very materially varied by these circumstances. Lord Mansfield held, that the defendant having recovered the debt against the bankrupt, who was personally present at Gibraltar, was not answerable to the assignees for the money."

*According to the views of Lord Loughborough,* the rights of the *assignees* and the *creditor* who sues in a foreign country, after the act of bankruptcy or assignment, depend upon the principle of the *lex domicilii* as applied to the *bankrupt* on the one hand, and the *creditor* on the other. He puts the case upon the question whether the *foreign court* in which the attachment is sued, *the creditor residing within its jurisdiction,* would, *on notice of the assignment, and its being set up as a defence,* prefer the title of the assignees, and hold the attaching creditor barred. (1 H. Bl. Rep. 692, 3.) Lord Kenyon places the question in the *same view,* in *Hunter* v. *Potts,* (4 T. R. 192,) and both agree that the claim of the assignees must depend on the question, whether the assignment would be *recognized as operative by the law of the foreign country;* and the latter holds, that, uncontradicted by proof of a contrary law in the foreign country, the *lex domicilii* of the bankrupt shall prevail. (*Harrison* v. *Sterry,* 5 Cranch, 289, as explained in *Holmes* v. *Remsen,* 4 Johns. Ch. Rep. 488, S. P. 2 H. Bl. 409, S. P.) *M'-Intosh* v. *Oglivie,* (4 T. R. 193, note,) may be supported by these principles ; and most of the other cases upon the same question, which has been, as before observed, often up between assignees and attaching creditors, will, I believe, be found to accord with the rules above cited. (*Philips* v. *Hunter,*

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

2 H. Bl. 402. *Holmes* v. *Remsen,* 4 Johns. Ch. Rep. 460. *Smith* v. *Buchanan,* 1 East, 11, per Lord Kenyon, Ch. J. *Ex parte Blakes,* 1 Cox's Ch. Rep. 398. *Le Chevalier* v. *Lynch,* Doug. 170. *The Royal Bank of Scotland* v. *Cuthbert,* in the Court of Session, Scotland, 1 Rose's Cas. Bank. app. 462, and especially the reasoning of Lord Robertson, p. 477, 8, 9, on the merits. *Selkrig* v. *Davies,* 2 Dow, 230. 2 Rose's Cas. Bank. 291, S. C. by the title of *Selkrig* v. *Davis. Parish* v. *Seron,* in the City Court of Dunkirk, France, reported in Coop. Bank. Law, addenda XXVII. *Bird* v. *Caritat,* 2 Johns. Rep. 342.)

Chancellor Kent, in *Holmes* v. *Remsen,* (4 Johns. Ch. Rep. 460,) *laid down a farther qualification* of the above rules. It was this, that the doctrine of relation in regard to bankrupts is a mere positive rule of municipal policy, and the rule of comity among nations does not require its adoption. This places *bankrupt assignments* and *ordinary insolvent assignments* upon the same footing. These, not any relation to the act of bankruptcy, are to be regarded as divesting the bankrupt's title.

In Pennsylvania, *the application of the lex domicilii to an English bankrupt assignment was denied;* (*Milne* v. *Moreton,* 6 Bin. 353 ;) and preference given to an attachment, though subsequent to the bankrupt assignment. (Id.) So in Connecticut. (*Taylor* v. *Geary,* Kirby's Rep. 313.) So in Maryland. (*Burk* v. *M'Clain,* 1 Harris & M'Henry's Rep. 236 *Wallace* v. *Patterson,* 2 id. 463. *Ward* v. *Morris,* 4 id. 330.) So in North Carolina. (*M'Neill* v. *Colquhoon,* 2 Hayw. 245.) So in South Carolina. (*Topham's Assignees* v. *Chapman,* 1 Rep. Con. Court S. C. 283.) And the general proposition, that *the bankrupt law of a foreign country cannot operate a legal transfer of property in this,* was broadly and distinctly laid down by the Supreme Court of the United States, in *Harrison* v. *Sterry,* (5 Cranch, 289, 302.) This proposition is also very ably supported by Mr. Justice Platt, in *Holmes* v. *Remsen,* (20 Johns. Rep. 254 to 267,) where he takes issue with the late Chancellor's reasoning upon the same case when before him. (4 Johns. Ch. Rep. 460.) Judge Platt thinks that, at any rate, the rules of comity adopted and vindicated by the Chancellor, cannot, with propriety, be extended by us beyond our sister states, or by England beyond Scotland and Ireland ; and he treats it as a mere rule of comity ; not of international law.

*In all questions arising between the subjects of different states,* each is to be considered as a party to the authoritative acts of his own government. (*Consequa* v. *Fanning,* 3 Johns. Ch. Rep. 587. 17 Johns. Rep. 511, S. C. on appeal.)

3. *Of proceedings in foreign courts of justice.*] It is a general rule, *that judgments or decrees by the courts of foreign nations, having jurisdiction are conclusive on the same question, passed upon by them, arising incidentally here.* (3 Dall. 372–3, note. 3 Johns. Rep. 168–9, per Kent, C. J. Cas. Temp. Hardw. 83, per Lord Hardwicke, C. J.) Thus, the defendant being indicted in England for *murder* at the Cape of Good Hope, was allowed to plead an acquittal by a Court having jurisdiction there. (*Roche's case,* Leach's Cr. Cas. 138. *Hutchinson's case,* cited 1 Show. Rep. 6, and 2 Str. 733, S.

**P.)** So a foreign decree establishing a *marriage* is conclusive on the marriage coming incidentally in question here.   (1 Ves. sen. 159, per Lord Hardwicke.)   So a decree vacating the *acceptance* of a bill of exchange.   (*Burrows* v. *Jemino*, 2 Str. 733.   Vin. Abr. *Evidence*, (A. b. 13,) pl. 9, S. C. under title of *Burrows* v. *Temineaw*.)   So a decree for the *sale of goods*.   (*Grant* v. *M'Lachlin*, 4 Johns. Rep. 34.)

*Collection of money by foreign attachment is a bar.*]   Thus, where I owe a debt to, or have funds of a foreigner, and a creditor of the foreigner sues me as garnishee by foreign attachment, by which I am compelled to pay the debt, the authorities are uniform, that, having once paid the debt upon due process of law, this shall *bar all claim of my creditor*, whether he sue me for it in the country where the attachment issued, or any foreign country   This proposition is deducible from several cases cited under the previous head of the *lex domicilii* in which the same thing was held as to actions between the assignees of bankrupts and garnishees.   There are also other cases to the same effect, at the suit of *assignees* or *creditors* in their own names.   (*Cleve* v. *Mills*, 1 Cooke's B. L. 303.   *Embree & Collins* v. *Hanna*, 5 Johns. Rep. 101.   *Savage's case*, 1 Salk. 291.   *Holmes* v. *Remsen*, 4 Johns. Ch. Rep. 467.   *M'Daniel* v. *Hughes*, 3 East, 367.   *Holmes* v. *Remsen*, 20, Johns. Rep. 229.)

*A judgment upon foreign attachment* is a bar to a suit here by assignees under the absconding debtor act, though the attachment under that act issued before the money came to the hands of the garnishee, and before the foreign attachment issued against him.   (*Holmes* v. *Remsen*, 20 Johns. Rep. 229.)

*And where the maker of a note* was sued as garnishee in Georgia, and compelled to pay the money as debtor to the maker of the note ; though it was endorsed *bona fide* to a citizen of Massachusetts before the suit in Georgia was commenced ; yet, *held*, by the Court in Massachusetts, on a suit by the endorsee, that the proceedings in Georgia were a bar, the note having been made in Georgia.   And the Court relied much on the ground of the *lex loci contractus*.   (*Hull* v. *Blake*, 13 Mass. Rep. 153.)

*A proceeding by foreign attachment* will *abate* or *bar* a suit here, accordingly as it is *pending*, or *carried to judgment*, in the same manner as a suit commenced here for the same cause.   (*Brook* v. *Smith*, 1 Salk. 280.   *Chevalier* v. *Lynch*, Dougl. 170.   *Cleve* v. *Mills*, 1 Cooke's Bank. L. 303.   *Embree* v. *Hanna*, 5 Johns. Rep. 102.   *Savage's case*, 1 Salk. 291.   *La Chevalier* v. *Dormer*, Doug. 170.   *Fisher* v. *Lane*, 3 Wils. 297, questioned in *Embree* v. *Hanna*, 5 Johns. Rep. 102, 3.   *Nathan* v. *Giles*, 5 Taunt. 558.)

*In assumpsit*, it may be given in evidence under the *general issue*, when a a bar ; (1 Chit. Pl. 480, and the authorities there cited ; *Burrows* v. *Temineaw*, Vin Abr. *Evidence*, (A. b. 13,) pl. 9 ; *M'Daniel* v. *Hughes*, 3 East, 367 ; *Nathan* v. *Giles*, 5 Taunt. 558 ;) otherwise, in an action on a *specialty*.   (1 Chit. Pl. 480, and the authorities there cited.)

A suit pending in a foreign country between the same parties, commenced by process against the person will not abate a suit here for the same cause, like a proceeding by foreign attachment ; (*Brown* v. *Joy*, 9 Johns. Rep. 221,

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

and the cases there cited ;) but if it be carried to judgment, it is a bar. (Id *Griswold* v. *Pitcairn*, 2 Con. Rep. N. S. 85.)

*The cases in England,* and *most of those* decided by the Courts in the United States, hold, that a *decree of condemnation,* by a *foreign court of admiralty* is, like all other foreign decrees, on coming incidentally in question here, *conclusive.* (Park on Ins. 462, &c. and the cases there cited. Condy's Marshall, 392, 3, and the cases there cited.) *Hughes* v. *Cornelius,* (2 Show. 232,) is the leading English case. . This has been followed by numerous others. (*Bernardi* v. *Motteux,* Doug. 575. *Mayne* v. *Walter,* Park, 363. *Barzilla* v. *Lewis,* id. 359. *Salloucci* v. *Woodmas,* id. 362. *Same* v. *Johnson,* id. 364. *De Souza* v. *Ewer,* id. 361. *Calvert* v. *Boville,* 7 T. R. 523. *Geyer* v. *Aquilar,* id. 681. *Rich* v. *Parker,* id. 705. *Christe* v. *Secretan,* 8 id. 192. *Garrels* v. *Kingston,* id. 230. *Pollard* v. *Bell,* id. 430. *Helstrom* v. *Rhodes,* id. 444. *Bird* v. *Appleton,* id. 562. *Price* v. *Bell,* 1 East, 663. *Kindersley* v. *Chase,* Park, (5th ed.) 363. *Oddy* v. *Boville,* 2 East, 473. *Baring* v. *Claggett,* 3 B. & P. 201. *Lothian* v. *Henderson,* id. 499. *Baring* v. *The Royal Exchange Ass. Co.* 5 East, 99. *Bolton* v. *Gladstone,* id. 155. *Fisher* v. *Ogle,* 1 Campb. 418. *Donaldson* v. *Thompson,* id. 429.)

There are also many American cases to the same effect. (*Groning* v. *The United Ins. Co.* 1 Nott & M'Cord's Rep. 537. *Bailey* v. *South Co. Ins. Co.* id. 541, 2, &c. note. *Starke* v. *Woodward,* id. 329, 330, note. *Goix* v. *Low,* 1 Johns. Cas. 341. *Croudson* v. *Leonard,* 4 Cranch, 434. *Gray* v. *Swan,* 1 Harris & Johns. Rep. 142. *Dempsey* v. *The Ins. Co. of Pennsylvania,* 1 Bin. 299, note (*f*). 4 Yeates' Rep. 119, S. C. by title of *Browne* v. *President, &c. of the Ins. Co. of Pennsylvania. Baxter* v. *The New Eng. Mar. Ins. Co.* 6 Mass. Rep. 277. 7 id. 275, S. C. *Robinson* v. *Jones,* 8 id. 536. *Cheriot* v. *Foussat,* 3 Bin. Rep. 220. *Armroyd* v. *Williams,* C. C. April, 1811, MS. Whart. Dig. *Evidence,* (E.) pl. 64. *Stewart* v. *Warner,* 1 Day's Rep. 142. *Brown* v. *Un. Ins. Co. at New London,* 4 Day's Rep. 179. *Laing* v. *The United Ins. Co.* 2 Johns. Cas. 174.)

*An exception was,* when it related to a warranty of American property in a policy which contained an express provision that the warranty should *be proved, if required, in a particular place.* (*Calbraith* v. *Gracie,* C. C. April, 1805, MS. 1 Bin. 296, note. *Calhoun* v. *The Ins. Co. of Penn.* 1 Bin. 293.) Or when, on its face, it appeared to be for *insufficient cause.* (*Fitzsimmons* v. *Newport Ins. Co.* 4 Cranch, 185.)

*In this state,* such a decree has long been treated, under any circumstances, as an exception to the general rule ; being considered mere *prima facie* evidence, though *incidentally* in question. (*Vundenheuvel* v. *The U. Ins. Co.* 2 Caines' Cas. in Err. 217. 2 Johns. Cas. 451, S. C. *Johnston* v. *Ludlow,* 2 Johns. Cas. 481. *Laing* v. *U. Ins. Co.* id. 487. *Radcliff* v. *U. Ins. Co.* 9 Johns. Rep. 277. *New York Fire Ins. Co.* v. *De Wolf,* 2 Cowen's Rep. 66.)

And if enough appear on the face of the decree to impeach it, it is not even *prima facie* evidence. *Johnston* v. *Ludlow,* 1 Caines' Cas. Err. 21.)

And in Massachusetts, if it do not distinctly state the cause of condemnation, it is mere *prima facie* evidence. (*Robinson* v. *Jones,* 8 Mass. Rep.

**536,** and vid. *Maley* v. *Shattuck*, 3 Cranch, 488, and *Bailey* v. *S Car. Ins. Co.* 1 Nott & M'Cord's Rep. 541 to 546, S. P.)

So in Pennsylvania, (*Vasse* v. *Ball*, 2 Dall. 270 ; 2 Yeates, 178, S. C. ; and vid. *Crousillat* v. *Ball*, 3 Yeates, 375 ; 4 Dall. 294, S. C.) where they have adopted, by statute, the rule of this state. (5 Sm. Laws. 49.)

*If the action here be directly on a foreign judgment or decree,* all the authorities agree, that it is no more than *prima facie* evidence. (*Duplein* v. *De Roven,* 2 Vern. 540. *Walker* v. *Witter,* Doug. 1. *Crawford* v. *Whittal,* id. 4, note. *Galbraith* v. *Neville,* id. 6, note. *Sinclair* v. *Fraser,* stated in Dougl. 5, note, and also cited in the Duchess of Kingston's trial, 11 Hargrave's St. Tr. 122. 5 East, 475, note *b.* and what is said there of *Galbraith* v. *Neville,* per Lord Mansfield, in *Herbert* v. *Cook,* Willes, 37, n. (*a.*) *Philips* v. *Hunter,* 2 H. Bl. 410, per Eyre, Ch. J. *Bartlet* v. *Knight,* 1 Mass. Rep. 401. *Buttrick* v. *Allen,* 8 Mass. Rep. 273. *Bissell* v. *Briggs,* 9 id. 462. *Stevens* v. *Gaylord,* 11 id. 265. 3 Johns. Rep. 168, 9, per Kent, C. J. *Taylor* v. *Bryden,* 8 Johns. Rep. 173. *Hubbell* v. *Cowdrey,* 5 id. 132. *Smith* v. *William,* 2 Caines' Cas. in Err. 110, 119. *James* v. *Allen,* 1 Dall. 191. *Hitchcock* v. *Aicken,* 1 Caines' Rep. 460. *Betts* v. *Death,* Addis. Rep. 265. *Stoddard* v. *Allen,* N. Chipman's Rep. 44. *King* v. *Van Gilder,* 1 D. Chipman's Rep. 59.)

*Judgments and decrees of neighboring states,* are, however, made an exception to this rule by the constitution, (art. 4, s. 1,) and laws, (1 U. S. Laws, old ed. 115 ; 2 id. new ed. 102,) of the United States. After *various decisions* of the state courts, placing them, as to their effect, on the same footing as foreign judgments, (vid. the cases last above cited from the state reports,) and *some decisions* giving them full effect, (vid. *Armstrong* v. *Carson's Executors,* 1 Dall. 302 ; *Green* v. *Sarmiento,* U. S. C. C. ; 1 Peters' Rep. 74 ; *Jacobs* v *Hull,* 12 Mass. Rep. 25 ; and *Betts* v. *Death,* Addis. Rep. 265,) the question was *put at rest* by *Mills* v. *Duryee,* (7 Cranch, 481,) in the Supreme Court of the United States. This case made them of the same dignity and conclusive effect in each state, as in that where rendered. Since that case, several others have followed to the same effect. (*Clark's Executors* v. *Carrington,* 7 Cranch, 308. *Hampton* v. *M'Connel,* 3 Wheat. Rep. 234. *Buford* v. *Buford,* 4 Munf. Rep. 241. *Borden* v. *Fitch,* 15 Johns. Rep. 121. *Andrews* v. *Montgomery,* 19 Johns. Rep. 162. *Field* v. *Gibbs,* 1 Peters' Rep. 155. *Commonwealth* v. *Green,* 17 Mass. Rep. 515. *Gibbons* v. *Livingston,* 1 Halsted's Rep. 236, 275, 283, 4.)

*But the constitution, statute, &c. is confined to civil judgments, &c. and a judgment in a criminal prosecution,* in one state, can have no validity or effect in another ; nor can its consequences, direct or incidental, extend into another state. (*Commonwealth* v. *Green,* 17 Mass. Rep. 515.) Thus, a foreign conviction of one for an infamous crime, does not render him an incompetent witness. (Id.) So of a conviction in a neighboring state. (Id.)

*A judgment of a neighboring state on foreign attachment* is not conclusive evidence of the debt, even in a suit between the same parties. (*Phelps* v. *Holker,* 1 Dall. 261. *Betts* v. *Death,* Addis. Rep. 265.)

*All the cases agree,* both as to *foreign* and *state* judgments or decrees, that in order to make them effectual to any purpose, the Court in which they are

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

rendered *must have jurisdiction*. As to the source from which this jurisdiction must emanate, it is enough that the Court be one *de facto*, deriving its authority from those in whom the power of the country is vested. (*Bank of North America* v. *M'Call*, 4 Bin. 371.) Upon this principle, the proceedings of a Court in the late unacknowledged government of St. Domingo were recognized as valid. (Id.) And vid. *Ingraham's Heirs* v. *Cock*, (1 Overton's Tennessee Rep. 22, 28, &c.) as to the Franklin government.

For the *manner of proving the lines of a state*, vid. *State* v. *Evans*, (id 220.)

Being *properly organized, the forum proceeds according to its own laws ;* and if these sanction a foreign attachment against a garnishee, even for the debt of a deceased foreigner, other governments will not, therefore, hold the proceeding void. (*Bank of North America* v. *M'Call*, 4 Bin. 371.)

But if *the suit be commenced and carried to judgment without personal notice* to the defendant, the whole is void ; and will not be received even as *prima facie* evidence in support of an action. (*Buchanan* v. *Rucker*, 9 East, 192. 1 Campb. Rep. 63, S. C. *Kibbe* v. *Kibbe*, Kirby's Rep. 119. *Butrick* v. *Allen*, 8 Mass. Rep. 273. *Pawling* v. *Wilson*, 13 Johns. Rep. 192. *Borden* v. *Fitch*, 15 id. 121. *Kilburn* v. *Woodworth*, 5 id. 37. *Phelps* v. *Holker*, 1 Dall. 261. *Robinson* v. *Executors of Ward*, 8 Johns. Rep. 86. *Cavan* v. *Stewart*, 1 Stark. 525.)

And it is *the same thing*, though notice be given to the defendant, if he be out of the state at the time. (*Fenton* v. *Galick*, 8 Johns. Rep. 194.)

The jurisdiction of the Court even of a neighboring state, and especially of a foreign country, may always be questioned. (*Rose* v. *Himely*, 4 Cranch, 241. *Borden* v. *Fitch*, 15 Johns. Rep. 121. *Pawling* v. *Wilson*, 13 id. 191. *Andrews* v. *Montgomery*, 19 id. 162, per Spencer, C. J. *Snell* v. *Foussat*, 3 Bin. Rep. 241, note. *Cheriot* v. *Same*, id. 220. *Bartlet* v. *Knight*, 1 Mass. Rep. 401. *Bissell* v. *Briggs*, 9 Mass. Rep. 467, per Parsons, C. J *Shumway* v. *Stillman*, 4 Cowen's Rep. 292. *Cavan* v. *Stewart*, 1 Stark. 525.)

The jurisdiction *may be questioned on the general issue*, pleaded to debt or assumpsit on the judgment. (*Bissel* v. *Briggs*, 9 Mass. Rep. 462. *Stevens* v. *Gaylord*, 11 id. 266.)

If *the source of the Court's authority be unusual*, it lies on the one who would support the sentence to prove its legitimacy ; but if its origin does not appear, it will be presumed legitimate. (*Snell* v. *Foussat*, C. C April, 1825 3 Bin. 239, note. *Cheriot* v. *Foussat*, id. 220.) And vid. also *Hudson* v. *Guester*, (4 Cranch, 295,) as to proving loss of jurisdiction.

For the *manner of pleading non-residence* of the party, in order to show want of jurisdiction of the person in a foreign court, vid. *Smith* v. *Rhoades*, (1 Day's Rep. 168 ;) *Shumway* v. *Stillman*, (4 Cowen's Rep. 292.) In *Walker* v. *Maxwell*, (1 Mass. Rep. 104,) it was held that in pleading, the proceedings of a Court in Rhode Island, upon a statute, it should be particularly set forth. It is not enough to say generally, that they were pursuant to the statute, &c.

If *the foreign Court have jurisdiction*, its proceedings cannot be impeached for error, on coming incidently in question here. (*Tarleton* v. *Tarleton*, 4

M. & S. 20.) And in an action directly upon the judgment, the Court will intend jurisdiction, and that the proceedings were regular until the contrary be clearly shown. (*Malony* v. *Gibbons*, 2 Campb. Rep. 502. *Shumway* v. *Stillman*, ante, 292.) But its justice may be impeached upon the general issue. (*Stevens* v. *Gaylord*, 11 Mass. Rep. 266.)

The decree must be complete, definite, certain and final in the sum to be paid; (*Sadler* v. *Robins*, 1 Campb. Rep. 253 ;) but being so, an action will lie even on the decree of a foreign Court of Chancery, the same as on a judgment at law. (Id.)

The judgment or decree may be avoided for fraud, or where it is obtained in evasion of the laws of the country in which it is sought to be enforced. (*Jackson* v. *Jackson*, 1 Johns. Rep. 424. *Buford* v. *Buford*, 4 Munf. Rep. 241. *Borden* v. *Fitch*, 15 Johns. Rep. 121.)

4. *Of foreign statutes.*] These have not *proprio vigore*, the force of law, beyond the limits of the state enacting them. (*Pearsall* v. *Dwight*, 11 Mass. Rep. 88.)

5. *Of foreign criminal laws.*] These cannot, *ex vigore suo*, have any force or effect beyond the state which enacts them. (*Commonwealth* v. *Green*, 17 Mass. Rep. 515. *The Inh. of West Cambridge* v. *The Inh. of Lexington*, 1 Pick. Rep. 506.)

6. *The manner of proving foreign laws, including the common law of the different states.*] Where an act is *malum in se*, and an offence at common law, Courts will presume it forbidden by the laws of the country where it was performed, until the contrary is shown ; and upon this principle the Supreme Judicial Court in Massachusetts held a contract made in New York, to be void as founded in champerty, without requiring proof that it was forbidden here. (*Thurston* v. *Percival*, 1 Pick. Rep. 415.) But it is otherwise of a more positive law ; and, accordingly, where infancy was set up as a defence to an action upon contract made in a foreign country, it was held necessary to show by evidence that it was a defence by the law of that country. (*Male* v. *Roberts*, 3 Esp. Rep. 163. *Thompson* v. *Ketcham*, 8 Johns. Rep. 189.) Yet in *Legg* v. *Legg*, (8 Mass. Rep. 99,) the Court, on a question whether a marriage in Vermont passed the wife's *choses in action* to the husband, said, " We must presume the laws of Vermont to be similar to ours on this subject, unless the contrary is regularly shown ;" and the same was held in Maryland even as to real property. *Harper* v. *Hampton*, 1 Harris & Johns. Rep. 687.)

The general rule is, that the law of a foreign country must be proved; and will not be judicially noticed by our Courts. (*Freemoult* v. *Dedire*, 1 P Wms. 429, 431. *Feaubert* v. *Turst*, Prec. Ch. 207. 1 Br. P. C. 38, S. C. Vin. Abr. Foreign, (C.) pl 1, S. C. *Mostyn* v. *Fabrigas*, Cowp. 174. *Ganer* v. *Lady Lanesborough*, Peake's Rep. 17. *Melan* v. *The Duke of Fitz James*, 1 B. & P. 138. *Collet* v. *Lord Keith*, 2 East, 273. *Male* v. *Roberts*, 3 Esp. Rep. 163. *Talbot* v. *Seaman*, 1 Cranch, 38. *Church* v. *Hubbart*, 2 id. 187.)

VOL. IV.                    67

UTICA,
Aug. 1825.

Andrews
v.
Herriot.

*Various other cases go to the same doctrine.* They hold that the *common* or *unwritten law* is to be proved by *parol*, but that *statutes* or *written laws* must, in general, be proved by *copies* authenticated under the government seal, which was noticed judicially in *Anon.* (9 Mod. 66.) This rule, with its exceptions and illustrations, may be gathered from the following cases: (*Kenney* v. *Clarkson*, 1 Johns. Rep. 385, 394; *Walpole* v. *Ewer*, 2 Condy's Marsh. 762; *Boehtlinck* v. *Schneider*, 3 Esp. Rep. 58; *Hulle* v. *Heightman*, 4 id. 75: *Frith* v. *Sprague*, 14 Mass. Rep. 455; *Livingston* v. *Maryland Ins. Co.* 6 Cranch, 274; *Robinson* v. *Clifford*, 2 Condy's Marsh. 706 a. note; Whart. Dig. *Evidence*, F. pl. 82, S. C., *Seton* v. *Del. Ins. Co.* id.; id. *Clegg* v. *Levy*, 3 Campb. 166; *Miller* v. *Heinrick*, 4 Campb. 155: *Consequa* v. *Willins*, 1 Peters' Rep. 225, 229; *Smith* v. *Elder*, 3 John. Rep. 105. *Richardson* v. *Anderson*, 1 Campb. 65, note (*a*); *Brush* v. *Wilkins*, 4 John. Ch. Rep. 520; *Lessee of Albertson* v. *Robeson*, 1 Dal. 9; *Young* v. *The Bank of Alexandria*, 4 Cranch, 384; *Livingston* v. *The Maryland Ins. Co.* 6 Cranch, 274; *Woodbridge* v. *Austin*, 2 Taylor's Rep. 367.

In *Latimer* v. *Elgin*, (4 Dess. Rep. 26, 32,) Mr. Haywood's Reports were received as evidence of the common law of North Carolina.

7. *Manner of proving state statutes.*] This is matter of positive regulation by statute, &c. upon which several decisions have been made. (Const. of The United States, Art. 4, s. 1. 1 U. S. Laws, old ed. 115, 2, id. new ed. 102. *Craig* v. *Brown*, 1 Peters' Rep. 352. *Thompson* v. *Musser*, 1 Dall. 458. *Poindexter's exrs.* v. *Barker*, 2 Hayw. 173. *United States* v. *Johns*, 4 Dall. 413, 416. *Thompson* v. *Musser*, 1 Dall. 462. *Biddis* v. *James*, 6 Bin. Rep. 321. *Commonwealth* v. *Frazer*, cited 6 Bin. Rep. 323. *Commonwealth* v. *Longchamps*, Whart. Dig. *Evidence*, F. pl. 80. *State* v. *Stade*, 1 D. Chipman's Rep. 303. *Ellmore* v. *Mills*, 1 Hayw. Rep. 359, 360.)

8. *Manner of proving foreign judgments, decrees, &c.*] This should, in general, be by proving the handwriting of the foreign judge who signs them, and the authenticity of the seal affixed. (*Henry* v. *Adey*, 4 Esp. Rep. 229, 3 East, 221. *Buchanan* v. *Rucker*, 1 Campb. Rep. 63. *Flindt* v. *Atkins*, 3 id. 215. *Alves* v. *Bunbury*, 4 id. 28.

*The foreign court must certify with a seal, if it have one, though it be old and disused,* (*Cavan* v. *Stewart*, 1 Stark. 525,) *and if there be no seal,* the record or proceedings must, at least, be authenticated in the usual manner, or in some mode known to the foreign government. (*Alves* v. *Bunbury*, 4 Campb. Rep. 28. *Black* v. *Braybrook*, and *Appleton* v. *The same*, 2 Stark. Rep. 6, 7.)

*Since the union*, an Irish judgment is properly pleadable as a record, but it can be proved only by an examined copy on oath. (*Collins* v. *Ld. Viscount Matthew*, 5 East, 473. 2 Smith's Rep. 25, S. C.)

*Our own decisions* give directions for almost all the different modes of proof upon this head, which it may be necessary to resort to. (*Smith et al.* v. *Blagge*, 1 John. Cas. 238. *Delafield* v. *Hand*, 3 John. Rep. 310. *Vandervoort* v. *Smith*, 2 Caines' Rep. 155. *Yeaton* v. *Fry*, 5 Cranch, 335. *Gardiner* v.

*Col. Insurance Co.* 7 John. Rep. 514. *Butrick* v. *Allen*, 8 Mass. Rep. 273. *Hadfield* v. *Jameson*, 2 Munf. 53. *Church* v. *Hubbart*, 2 Cranch, 238, &c. *Marshall* v. *Union Ins. Co.* C. C. April, 1810, MS. Whart. Dig. Evidence, E. pl. 72. *Assuria* v. *Ins. Co. of Pennsylvania*, C. C. Oct. 1812, MS. id. pl. 73. *Houquebies* v. *Girard*, C. C. Oct. 1808, MS. id. pl. 74. *Russel* v. *Union Ins. Co.* C. C. April, 1806, MS. id. pl. 75. *Dederer* v. *Del. Ins. Co.* C. C. April, 1807, MS. id. pl. 76. *Gardere* v. *The Col. Ins. Co.* 7 John. Rep. 514. *Pepoon* v. *Jenkins*, 2 John. Cas. 119. *Young* v. *Gregory*, 3 Call's Rep. 446. *Hadfield* v. *Jameson*, 2 Munford's Rep. 53. *Griswold* v. *Pitcairn*, 2 Con. Rep. N. S. 85. *Messonier* v. *Union Ins. Co. of Charleston*, 1 Nott & M'Cord's Rep. 168. *Hincle* v. *Carruth*, 1 Con. Rep. S. Carolina, 471.)

9. *Manner of proving state judgments, decrees, &c.*] This is also matter of positive regulation, as to which the authorities follow: (Const. U. S. Art. 4, s. 1; 1 U. S. Laws, old ed. 115, 2 id. new ed. 102; *Smith* v. *Blagge*, 1 John. Cas. 238; Note to *Alston* v. *Taylor*, 1 Hayw. 394, 5; *Ellemore* v. *Mills*, id. 359; *Murray* v. *Marsh*, 2 id. 290; *Pepoon* v. *Jenkins*, 2 John. Cas. 119; *Ferguson* v. *Harwood*, 7 Cranch, 408; *Drummond* v. *Magruder*, 9 Cranch, 122; *Craig* v. *Brown*, 1 Peters' Rep. 352; *Turner* v. *Waddington*, C. C. Oct. 1811, MS. Whart. Dig. Evidence, C. pl. 18; *Frey.* v. *Wells*, 4 Yeates' Rep. 396; *Thurston* v. *Murray*, 3 Bin. Rep. 326; *Haight* v. *Morris*, 2 Halstead's Rep. 289; *Thompson* v. *Bullock*, 1 Bay's Rep. 364, 366.)

*To make the record, &c. conclusive, it should be authenticated according to the act of congress.* If this be not so, however, but it be authenticated in the same manner as foreign records may be, it is still testimony, but sinks to the degree of *prima facie* evidence. (*Baker et al.* v. *Field*, 2 Yeates' Rep. 532, and *Raiston* v. *Cummins* there cited.) *Semb.* that, in this light, a sworn copy is admissible. (*Collins* v. *Ld. Matthew*, 5 East, 473; 2 Smith's Rep. 25, S. C.)

*A justice's judgment* in a neighboring state, is not within the act of congress, but must be proved, and has the same effect as a foreign judgment. (*King* v. *Gilder*, 1 D. Chipman's Rep. 59.) A copy certified by the justice was received in evidence. (id.)

8. *Of the lex loci rei sitœ.*] This governs real property, the title to which can be acquired and lost only in the manner prescribed by the law of the country where it is situate. (*United States* v. *Crosby*, 7 Cranch, 115. *Cutter* v. *Davenport*, per Cur. 1 Pick. Rep. 86. *Robinson* v. *Campbell*, 3 Wheat. Rep. 212. 4 T. R. 192, per Ld. Kenyon, C. J.; id. 184, where Law, arg. cites the authorities from the law of nations and the civil law. *Brodie* v. *Barry*, 2 Ves. & Bea. 131. *Selkrig* v. *Davis*, 2 Rose's Cas. Bank. 291. 2 Dow, 230. S. C. *Clark* v. *Graham*, 6 Wheat. Rep. 577. *Kerr* v. *Devisees of Moon*, 9 Wheat. Rep. 565. *M'Cormick* v. *Sullivant*, 10 id. 192, 202. *Darby* v. *Mayer*, id. 469. *Harper* v. *Hampton*, 1 Harris & John. Rep. 687. *Latimer* v. *Elgin*, 4 Dess. Rep. 26, 31, 2.)

*Thus, where one Nelson, of Grenada*, according to the law of that place

conveyed land in Massachusetts, by writing before a notary public without seal, the seal being a requisite formality in Massachusetts, held that the conveyance was void, (*United States* v. *Crosby*, 7 Cranch, 115 ;) and in *Selkrig* v. *Davis*, (2 Rose's Cas. Bank. 291. 2 Dow, 230,) it was held that a commission of bankrupt and assignment in England, though they passed the bankrupt's personal estate in Scotland, would not affect his real estate there.

*In deciding on state statutes concerning land*, the supreme court of the United States adopt the construction given by the state court, if that can be ascertained. (*Polk's lessee* v. *Wendell*, 9 Cranch, 87, 98.)

*Clark* v. *Graham*, (6 Wheat. 577,) applied the *lex loci rei sitœ*, to a deed and *Kerr* v. *Devisees of Moon*, (9 id. 565,) to wills of land *in a neighboring state.* So *M'Cormick* v. *Sullivant*, (10 id. 192. 202.)

*A mere change of sovereignty* does not vary the private rights of real property, existing before the change, whether they were required by individual or state grant. (*Mutual Assistant Society* v. *Watts' exr.* 1 Wheat. Rep. 279, 282.)

*The courts of every government or state* have the exclusive authority of construing its local statutes ; and their construction will be respected in other governments or states. (*Elmendorf* v. *Taylor*, 10 Wheat. Rep. 153, 159.)

*If the laws of another state are in question*, in a court of Maryland, even concerning real property in the neighboring state, and there is no proof what the law of the latter is, the court of Maryland will presume it to be the same with theirs. (*Harper* v. *Hampton*, 1 Harris and John. Rep. 687.)

*How far the lex loci rei sitœ*, in reference to *the evidence of the execution of wills of real estate*, proved and recorded according to *the laws of the different states*, is modified by the provisions of the constitution, and laws of the United States, in respect to the faith and credit, &c. to be given to the public acts, records and judicial proceedings of each state, in every other state ? Quere. (*Darby* v. *Mayer*, 10 Wheat. Rep. 469.)

10. *Of the lex fori.*] The great difficulty upon this head, has been to run a plain practical line between cases of the *lex loci contractus, lex domicilii*, &c. on the one hand, and the *lex fori* on the other ; for, though it is universally conceded, that the latter must govern the *remedy ; (Fenwick* v. *Sears*, 1 Cranch, 259 ; *Dixon's exrs.* v. *Ramsay's exrs.* 3 id. 319, 323 ; *Nash* v. *Tupper*, 1 Caines' Rep. 402 ; *Ruggles* v. *Keeler*, 3 John. Rep. 286 ; *Pearsall* v. *Dwight*, 2 Mass. Rep. 84 ; *Smith* v. *Spinola*, 2 John. Rep. 198 ; *Van Reimsdyk* v. *Kane*, 1 Gallis. Rep. 371 ; *Bird* v. *Caritat*, 2 John. Rep. 342 ; *Sicard* v. *Whale*, 11 John. Rep. 194 ; *Courtois* v. *Carpentier*, C. C. 1806. MS. Whart. Dig. Foreign Laws, &c. pl. 5 ; 1 B. & P. 142, per Heath J. ; *Doran* v. *O'Reilly*, 3 Price, 250 ; *Anon.* 7 Taunt. 244 ;) yet the courts of different countries have not unfrequently confounded the *remedy* with the *right ;* and rendered it very difficult for counsel to advise, not merely of new subjects not yet adjudged to belong to the one or the other, but sometimes of those to which the distinction has been judicially applied. An instance of the latter was *Meredith* v. *Hinsdale*, (2 Caines' Rep. 362,) overruled by the principal case; and it would, perhaps, be questionable, after the more enlightened view of the distinction taken by

modern cases, whether an agreement between two foreigners, that their contract should be enforced only by the tribunals of their own country, would oust our courts of jurisdiction, as was held in *Gienar* v. *Mayer*, (2 H. Bl. 603 ;) or that a party not liable to arrest in a suit upon his contract brought in the country where it was made, should, for that reason, be discharged on common bail in a suit upon the same contract in another country, as was held in *Melan* v. *Fitz James*, (1 B. & P. 138, from which Ld. Kenyon afterwards dissented, 2 East, 455 ; *Talleyrand* v. *Boulanger*, 3 Ves. 447, S. P. as in *Melan* v. *Fitz James; Conframp* v. *Bunel*, 4 Dall. 419, S. P.

The *principles adopted in Whittemore* v. *Adams*, (2 Cowen's Rep. 626, &c.) and several of the cases there cited, would seem utterly to exclude the influence of foreign laws upon the jurisdiction or practice of our courts.

The *form of the action*, (as in the principal case,) must clearly be determined by the *lex fori*. An action is, "*the form of a suit given by the law to recover a thing.*" (*Termes de la ley*, action.) It is a species of the *remedy*, which is called in its definition, "the action or means given by the law for the recovery of a right." (Cunningham's Law Dict. Remedy. Jac. Law Dict. Remedy.)

We *administer justice according to our laws and the laws prescribed by our legislature.* (14 John. Rep. 340. *Bird* v. *Caritat*, 2 John. Rep. 345.) And accordingly, where a statute of Connecticut declared, that in a suit brought there by an assignee of a *chose in action*, the plaintiff should, on proof of certain facts, be nonsuited, the law was holden inapplicable to a suit by such assignee in this state.

The *question of proper parties* must be settled by the law of the forum. A *foreign corporation* may sue here. (*Henriques* v. *Dutch West India Company*, 2 Ld. Raym. 1532. 1 Str. 612. *Silver Lake Bank* v. *North*, 4 John. Ch. Rep. 370, 2. The *society for the propagation of the Gospel &c.* v. *Wheeler*, 2 Gall. Rep. 105. *Bank of Marietta* v. *Pindal*, 2 Randolph's Rep. 465. *Portsmouth Livery Co.* v. *Weston*, 10 Mass. Rep. 91.) So a *foreign sovereign* or nation. (*Nabob of Arcot* v. *East India Co.* 4 Br. Ch. Rep. 180.)

But persons coming *en autre droit*, under the appointment of foreign laws, cannot be parties. To entitle them to be received, as such, they must have their appointments repeated under our laws. This has been held of foreign guardians ; (*Morrel* v. *Dickey*, 1 John. Ch. Rep. 153 ;) of foreign executors and administrators. (id. 156. *Tourton* v. *Flower*, 3 P. Wms. 369. *Lee* v. *Bank of England*, 8 Ves. 44. *Goodwin* v. *Jones*, 3 Mass. Rep. 514. *Riley* v. *Riley*, 3 Day's Rep. 74. *Fenwick* v. *Adm'rs of Sears*, 1 Cranch, 259. *Dixon's exrs.* v. *Ramsay's exrs.* 3 Cranch, 319. *Doolittle* v. *Lewis*, 7 John. Ch. Rep. 45. *Williams* v. *Storrs*, 6 id. 353. *Lewis* v. *M'Farland*, 9 Cranch, 159 *Doe* v. *Same*, 9 id. 151, 2. *Langdon* v. *Potter*, 11 Mass. Rep. 313. *Borden* v. *Borden*, 5 id. 67. *Stevens* v. *Gaylord*, 11 id. 256. *Cutler* v. *Davenport*, 1 Pick. Rep. 81. *Kerr* v. *Devisees of Moon*, 9 Wheat. Rep. 565. *Darby's lessee* v. *Mayer*, 10 id. 465. *Adm'rs. of Dodge* v. *Wetmore*, Brayton's Rep. 92. *Lee* v. *Havens*, id. 93.)

But *the objection does not apply* to an executor to whom land is devised. (*Doe* v. *M'Farland*, 9 Cranch, 151, 2.) Nor to the executor of a mortgagee.

(*Doolittle* v. *Lewis*, 7 John. Ch. Rep. 45.) They may enforce their claims here to lands in this state devised or mortgaged, without a domestic probate, because they do not come merely as executors. Yet it was holden that a foreign executor could not assign a mortgage of land in Massachusetts. (*Cutler* v. *Davenport*, 1 Pick. Rep. 81.)

*It was said by the late Chancellor, that foreign bankrupt assignees may sue here in their own names;* \Holmes v. *Remsen*, 4 John. Ch. Rep. 460, 485 ;) but the *contrary* was held as to a Court of law, in *Bird* v. *Caritat*, (2 John. Rep. 342,) and vid. *Milne* v. *Moreton*, (6 Bin. Rep. 353.) In *Dawes* v. *Boylston*, (9 Mass. Rep. 337, 346,) the supreme court of Massachusetts explicitly deny the right of English bankrupt assignees to sue there ; and vid. *Bird* v. *Pierpont*, (1 John. Rep. 118.) In *Raymond* v. *Johnson*, (11 John. Rep. 438,) this right was denied to an insolvent assignee of New Jersey.

*That the above cases, as to parties, go upon the lex fori,* vid. *Dixon's exrs.* v. *Ramsay's exrs.* (3 Cranch, 319 ;) *Bird* v. *Caritat*, (2 John. Rep. 345 ;) and *Milne* v. *Moreton*, (6 Bin. Rep. 353.)

*A promissory note payable to order,* though made in a country where it is not negotiable, may yet be negotiated here, and the endorsee may sue in his own name. (*Lodge* v. *Phelps*, 1 John. Cas. 139 ; 2 Caines' Cas. Err. 321, S. C. *Milne* v. *Graham*, 1 Barn. & Cresw. 192, S. P. on the ground that the note was within the spirit of the statute of 3 & 4 Ann. ch. 9, 1 R. L. 151.)

*Though distribution of the deceased's personal estate* is to be according to the *lex domicilii ;* yet the payment of his debts is to be according to the order, and in the manner prescribed by the law of the country where the assets are administered. This being matter of remedy, is subject to the *lex fori.* (*Harrison* v. *Sterry*, 5 Cranch, 299, per Marshall, Ch. J. *Milne* v. *Moreton*, 6 Bin. Rep. 361, per Tilghman, Ch. J.)

*And the same rule prevails as to heirs* in one state, though the assets arise by a sale of lands of their ancestor lying in another. The avails were decreed, therefore, to the specialty creditors, in such a case. (*Hamilton* v. *Heirs & Executors of Haynes*, Cam. & Norw. Rep. 413.)

*Foreign statutes of limitation* are in no case available here, but our own statutes of this kind are applicable to all actions. They belong to the *lex fori.* (*Decouche* v. *Savetier*, 3 John. Ch. Rep. 97. *Nash* v. *Tupper*, 1 Caines' Rep 102. *Ruggles* v. *Keeler*, 3 John. Rep 263. 1 Gallis. Rep. 376, per Story J. *Pearsall* v. *Dwight*, 2 Mass. Rep. 84. *Byrne* v. *Crowninshield*, 17 id. 55. *Medbury* v. *Hopkins*, 3 Con. Rep. N. S. 472. *Harper* v. *Hampton*, 1 Harris & Johnson's Rep. 453 id. 622, S. C.)

*It is now fully settled* that an *insolvent discharge* of the *person* relates merely to the *remedy ;* and if granted in another state, or a foreign country, it will not, under any circumstances, or at any stage of the cause, be noticed by our courts or allowed to operate here for any purpose. (*White* v. *Canfield*, 7 John. Rep. 117. *Tappan* v. *Poor*, 15 Mass. Rep. 419 *Watson* v. *Bourne*, 10 id. 337. *James* v. *Allen*, 1 Dall. 88. *Sicard* v. *Whale*, 11 John. Rep. 194. *Peck* v. *Hozier*, 14 John. Rep. 346. *Whittemore* v. *Adams*, 2 Cowen's Rep. 626. *Woodbridge* v. *Wright*, 3 Con

Rep. N. 3 523. *Vanuxern* v. *Hazlehurts*, 1 Southard's Rep 202, per Kirk-patrick, C. J.)

The same line which divides the *lex loci* and *lex fori* of foreign countries, exists between the United States and the several states ; and, accordingly, it has been lately held that the 34th section of the judiciary act of 1789, ch. 20, (2 U. S. Law, new ed. 70,) providing that the laws of the several states, except, &c. shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply, does not extend to the process and practice of those courts. It is a mere legislative recognition of the principles of universal jurisprudence as to the operation of the *lex loci.* This distinction was established and illustrated at large in *Wyman* v. *South-ard*, (10 Wheat. Rep. 1.)

11. *Law of crimes.*] The legislature of one state cannot define and pun-ish crimes committed in another. (*State* v. *Knight*, Tayl. Rep. 65.) A sta-tute doing this was declared unconstitutional and void. (Id.)

12. *Of the power of one state over the fugitives from the justice of ano-ther.*] See the opinion of Kent, Chancellor, in Washburn's case, (4 John. Ch. Rep. 106. 3 Wheeler's Criminal Cas. 473, S. C.,) and the opinion of Tilghman, C. J., in *The Commonwealth* v. *Deacon*, (2 Wheeler's Criminal Cas. 1.)